No. 26-30199

# In the United States Court of Appeals for the Fifth Circuit

WALTER ALLEN DUBOSE,
*Plaintiff – Appellee*

V.

PAUL CAMPBELL; WARDEN; DONNA NORMAN, NURSE,
*Defendants – Appellants*

———————————

On Appeal from the United States District Court for the
Western District of Louisiana
3:24-cv-00120

———————————

ORIGINAL BRIEF OF DEFENDANTS-APPELLANTS,
PAUL CAMPBELL AND DONNA NORMAN

———————————

Respectfully Submitted by:
**Jason P. Wixom (LSBN 32273)**
**RODRIGUE & ARCURI, LLP**
1615 Poydras St., Ste. 1250
New Orleans, LA 70112
Phone:       (504)592-4600
Fax:           (504)592-4641
Email:       jason@rodriguearcuri.com
*Counsel for Defendants-Appellants*
*Paul Campbell and Donna Norman*

## **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the Judges of this Court may evaluate possible disqualifications or recusal.

1.    Walter Allen DuBose, Plaintiff-Appellee;

2.    Paul Campbell, Defendant-Appellant;

3.    Donna Norman, Defendant-Appellant;

4.    Louisiana Sheriff's Law Enforcement Program, an inter-local risk management fund created pursuant to statutory authority;

5.    Jason P. Wixom, Laura Rodrigue, Blake J. Arcuri, current and/or former counsel for Defendants-Appellants, Paul Campbell and Donna Norman; and

10.    Samuel Weiss, counsel for Plainitff-Appellee Walter Allen DuBose.

*/s/Jason P. Wixom*
JASON P. WIXOM
Attorney of Record for Paul Campbell and Donna Norman

i

## **STATEMENT REGARDING ORAL ARGUMENT**

Paul Campbell and Donna Norman, through counsel, submit to the Court that oral argument in this Appeal would not be helpful to the Court insofar as the governing law is well-established and the issues to be considered are not complex.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS................................................ i

STATEMENT REGARDING ORAL ARGUMENT ................................. ii

TABLE OF CONTENTS ................................................................... iii

TABLE OF AUTHORITIES.............................................................. v

JURISDICTIONAL STATEMENT.......................................................... 1

ISSUES PRESENTED FOR REVIEW .................................................. 2

STATEMENT OF THE CASE .................................................... 3

    I.      BACKGROUND FACTUAL ALLEGATIONS ....................................... 3

    II.    THE COURSE OF PROCEEDINGS BELOW...................................... 6

    A.  DUBOSE SUES CAMPBELL AND NORMAN UNDER § 1983................ 6

    B.  CAMPBELL AND NORMAN MOVE FOR SUMMARY JUDGMENT ............ 8

    C.  THE DISRICT COURT DISMISSES DUBOSE'S CLAIM AGAINST NORMAN FOR DENIAL OF AN ARM/ELBOW SURGERY, BUT DENIES CAMPBELL AND NORMAN QUALIFIED IMMUNITY ON DUBOSE'S OTHER DENIAL OF MEDICAL CARE CLAIMS ................................................................ 9

SUMMARY OF THE ARGUMENT ..................................................... 10

STANDARD OF REVIEW ................................................................ 13

ARGUMENT.................................................................................. 14

I.     ASSUMING THE FACTS ALLEGED BY DUBOSE ARE TRUE, THEY ARE INSUFFICIENT FOR DENYING NORMAN QUALIFIED IMMUNITY RELATIVE TO DUBOSE'S CLAIM FOR DELAYED MEDICAL TREATMENT FOR HIS ARM/ELBOW IN FEBRUARY 2023 .............. 16

II.    ASSUMING THE FACTS ALLEGED BY DUBOSE ARE TRUE, THEY ARE INSUFFICIENT FOR DENYING PAUL CAMPBELL QUALIFIED IMMUNITY RELATIVE TO DUBOSE'S CLAIM FOR DELAYED MEDICAL TREATMENT FOR HIS DETACHED FOCUS LENS ........................... 19

III.   APPELLANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEIR CONDUCT WAS OBJECTIVELY REASONABLE IN LIGHT OF CLEARLY ESTABLISHED LAW DEFINED AT THE APPROPRIATE LEVEL OF SPECIFICITY..................................................................... 22

      A.   THE DISTRICT COURT ERRED BY FRAMING CLEARLY ESTABLISHED LAW TOO BROADLY.............................................. 24

CONCLUSION ............................................................................ 27

CERTIFICATE OF SERVICE................................................................ 29

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ........................ 30

CERTIFICATE OF COMPLIANCE WITH RULE 25.2 ......................... 31

iv

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Cisneros,*
  815 F.3d 239 (5th Cir. 2016) .................................................................. 11

*Ashcroft v. al-Kidd,*
  563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) ..................... 22

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ....................... 14

*Brosseau v. Haugen,*
  543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)) ......................... 23

*Brown v. Callahan,*
  623 F.3d 249 (5th Cir. 2010) .................................................................. 23

*City & Cty. of San Francisco v. Sheehan,*
  575 U.S. 600, 135 S.Ct. 1765, 191 L.Ed.2d 856 (2015) ................................... 22

*City of Tahlequah, Oklahoma v. Bond,*
  595 U.S. 9,142 S.Ct. 9, 211 L.Ed.2d 170 (2021) ................................... 22

*Cleveland v. Bell,*
  938 F.3d 672 (5th Cir. 2019) .................................................................. 13

*Cope v. Cogdill,*
  3 F.4th 198 (5th Cir. 2021) .................................................................... 23

*Darden v. City of Fort Worth,*
  880 F.3d 722 (5th Cir. 2018); ................................................................ 13

*District of Columbia v. Wesby,*
  138 S.Ct. 577, 199 L.Ed.2d 565 (2018) .................................................. 22

*Easter v. Powell,*
  467 F.3d 459 (5th Cir. 2006) .................................................................. 14

*Flores v. City of Palacios,*
  381 F.3d 391 (5th Cir. 2004)................................................................ 11

*Good v. Curtis,*
  601 F.3d 393 (5th Cir. 2010)................................................................ 18

*Hare v. City of Corinth, Miss.,*
  135 F.3d 320 (5th Cir. 1988)................................................................ 13

*Jimerson v. Lewis,*
  94 F.4th 423 (5th Cir. 2024) ................................................................ 17

*Johnson v. Jones,*
  515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) ........................ 18

*Joseph ex rel. Estate of Joseph v. Bartlett,*
  981 F.3d 319 (5th Cir. 2020)........................................................... 13, 23

*Kinney v. Weaver,*
  367 F.3d 337 (5th Cir. 2004).......................................................... 12, 18

*Kisela v. Hughes,*
  584 U.S. 100, 138 S. Ct. 1148, 200 L.Ed.2d 449 (2018) ...................... 24

*Lemoine v. New Horizons Ranch & Ctr., Inc.,*
  174 F.3d 629 (5th Cir. 1999)................................................................ 11

*Meadours v. Ermel,*
  483 F.3d 417 (5th Cir. 2007)................................................................ 13

*Melton v. Phillips,*
  875 F.3d 256 (5th Cir. 2017)................................................................ 12

*Morrow v. Meachum,*
  917 F.3d 870 (5th Cir. 2019)................................................................ 21

*Nevarez v. Dorris,*
  135 F.4th 269 (5th Cir. 2025) .............................................................. 22

*Newman v. Guedry,*
  703 F.3d 757 (5th Cir. 2012)................................................................ 21

*Oliver v. Scott,*
    276 F.3d 736 (5th Cir. 2002)................................................................. 14

*Orr v. Copeland,*
    844 F.3d 484 (5th Cir. 2016).................................................................. 1

*Pearson v. Callahan,*
    555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ......................... 13

*Petzold v. Rostollan,*
    946 F.3d 242 (5th Cir. 2019)................................................................. 15

*Porter v. Epps,*
    659 F.3d 440 (5th Cir. 2011).......................................................... 12, 14

*Ramirez v. Escajeda,*
    44 F.4th 287 (5th Cir. 2022) ................................................................. 12

*Rogers v. Jarrett,*
    63 F.4th 971 (5th Cir. 2023) ........................................................... 13, 22

*Salazar v. Molina,*
    37 F.4th 278 (5th Cir. 2022) ................................................................. 21

*Taylor v. LeBlanc,*
    60 F.4th 246 (5th Cir. 2023) ........................................................... 12, 13
*Thomas v. Gilley,*
    Civil Action No. 3:22-06174 (W.D.La. Sept. 20, 2023) ......................... 20

*Wagner v. Bay City,*
    227 F.3d 316 (5th Cir. 2000).................................................................. 1

*White v. Pauly,*
    580 U.S. 73, 137 S. Ct. 548, 551, 196 L.Ed.2d 463 (2017) ................... 24

**Statutes**

28 U.S.C. § 1331 ...................................................................................... 1

28 U.S.C. § 1367 ...................................................................................... 1

42 U.S.C. § 1983 ............................................................................. *passim*

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this case under 28 U.S.C. §§ 1331, 1367. The court denied in part Defendants-Appellants Paul Campbell and Donna Norman's motion for summary judgment seeking qualified immunity in a Judgment on March 19, 2026. ROA.572. Appellants timely filed a Notice of Appeal on April 10, 2026. ROA.587-588.

Although an order denying a motion for summary judgment is not ordinarily appealable, this Court has jurisdiction to review such orders pursuant to the collateral order doctrine when they involve the denial of qualified immunity. *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016). Where, as here, a district court has determined that genuine issues of material fact preclude a determination of qualified immunity, this Honorable Court has jurisdiction only to address the legal question of whether the genuinely disputed factual issues are material for the purposes of summary judgment. *See Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000). Jurisdiction is, therefore, proper.

## ISSUES PRESENTED FOR REVIEW

1. Walter Dubose did not present any evidence showing Nurse Donna Norman had subjective knowledge that he was at substantial risk of serious harm relative to his elbow/arm or that Norman delayed his medical treatment for that issue.  Assuming Walter Dubose's allegations are true, did the district court err in denying Nurse Donna Norman qualified immunity on that issue?

2. Walter Dubose did not present any evidence showing Warden Paul Campbell had personal involvement in allegedly delaying or denying him medical care relative to his detached focus lens. Assuming Walter Dubose's allegations are true, did the district court err in denying Warden Paul Campbell qualified immunity on that issue.

3. Did the district court err in denying Appellants qualified immunity relative to Walter Dubose's optical claim in the absence of clearly established law showing that they violated Walter Dubose's constitutional rights by failing to transport him to a surgery they did not know about?

## STATEMENT OF THE CASE

### I.   BACKGROUND FACTUAL ALLEGATIONS

During the period of 2023 through July 1, 2024, DuBose was a Louisiana Department of Corrections inmate incarcerated in Ouachita Correctional Center ("OCC"), having previously been convicted of aggravated battery and failure to register as a sex offender. ROA.346; ROA.23; ROA.148. Given DuBose's status as a DOC inmate, the Louisiana Department of Public Safety and Corrections had to approve any surgeries to be performed on him. ROA.346. In order for the Louisiana Department of Public Safety and Corrections to approve a surgery for a DOC inmate—such as DuBose—they must be provided with medical records issued by a medical professional stating that a surgery is necessary. ROA.346. These facts color the DuBose's allegations regarding his allegedly scheduled eye surgery, which no Appellant had notice of at any time.

DuBose alleges that he received a "focus lens" in one of his eyes in 2017, but it "came undone." ROA.88. On July 27, 2022, Dr. Sharma evaluated DuBose at OCC. ROA.20. DuBose was subsequently seen by

Dr. Chase Wilson ("Dr. Wilson") in the Ophthalmology Eye Clinic at Ochsner LSU on February 7, 2023. ROA.347, ROA. 349.   Dr. Wilson noted that Plaintiff reported his vision had been out of focus since 2020 and that he was not in any pain.  ROA.351.  An after visit summary was included in Plaintiff's Ochsner medical records, which state no orders were placed, no medications were to be changed and, most importantly, Plaintiff "[had] no upcoming appointments scheduled."  ROA.349-353. The February 7, 2023 Ochsner LSU medical records were the only records sent back to OCC with Plaintiff at the conclusion of his February 7, 2023 visit with Dr. Wilson.  ROA.454.

Although DuBose alleges Dr. Chase indicated he would be seen by a Dr. Cavanaugh at "Shreveport Eye Clinic" within two (2) weeks,  there is absolutely nothing in the medical records DuBose returned with to indicate that is true.   ROA.349-360. Further, neither Nurse Donna Norman nor Warden Paul Campbell were ever contacted by any physician's office or medical office indicating Plaintiff was to be seen by Dr. Cavanaugh at any time.   ROA.455; ROA.362.   Neither Donna Norman nor Paul Campbell deliberately delayed or denied Plaintiff

medical treatment of any sort at any time including, but not limited to any surgery. ROA.454; ROA.363.

Next, DuBose claims that on February 25, 2023, he injured his elbow in a physical altercation with another OCC inmate, such that he "surmised that his arm was fractured at the elbow." ROA.134. DuBose alleges that on February 27, 2023, he saw Nurse Greer—who is not a defendant in this matter—and, on March 1, 2023, she told Plaintiff that she scheduled him to see a visiting doctor. ROA.134. However, DuBose claims that on two separate occasions he was rescheduled to see the visiting doctor. ROA.134. However, DuBose offered nothing in support of this conclusory and speculative allegation. DuBose claims that he suffered pain through 2023 and that his arm healed improperly, he cannot straighten it, and that it "gives out." ROA.134; ROA.145. Presenting no evidence in support whatsoever, DuBose blames Nurse Norman for his condition, asserting that she was responsible for rescheduling Plaintiff's visits with the doctor. ROA.145.

## II.    The Course of Proceedings Below

### A.    DuBose sues Campbell and Norman under § 1983.

On January 29, 2024, DuBose sued various Ouachita Correctional Center entities and officials, including Appellants Campbell and Norman, in addition to Captain Chris Jerkins and the "Chief Administrator, Ouachita Correctional Center" in the United States District Court for the Eastern District of Louisiana under 42 U.S.C. § 1983.  ROA.16.  The matter was *sua sponte* transferred to the United States District Court for the Western District of Louisiana because no defendant was alleged to reside in the Eastern District of Louisiana and no part of the alleged events or omissions giving rise to DuBose's claims occurred within the Eastern District.  ROA.36.  Between February and June 2024, DuBose amended his complaint at least four times and, in doing so, repeatedly asserted claims based upon the medical care provided to him at OCC. ROA.16; ROA.75; ROA.79; ROA.88.  In DuBose's final amended complaint he joined or substituted additional defendants, including OCC, the OCC Medical Department, the Ouachita Parish Court, Judge Scott Lehy, Assistant District Attorney Holly Chambers, and Sergeant Wells.  ROA.143.

On April 26, 2024, DuBose filed a motion for preliminary injunction seeking an order requiring Defendants to send him to Ochsner LSU Health Eye Clinic-Shreveport for treatement of a detached focus lens located in his left eye. ROA.88. Campbell and Norman opposed that motion and attached an After Visit Summary from DuBose's February 7, 2023 appointment with Dr. Chase M. Wilson, M.D., at Ochsner LSU Health-Monroe Medical Center. ROA.106; ROA.110. Those records show DuBose had an optical repair in his left eye in 2016, but that his vision had been out of focus since 2020. ROA.110. Those records also show that there had been no recent changes to DuBose's condition and that DuBose was not experiencing any pain. ROA.110. Dr. Wilson noted glaucoma in the left eye and issued no orders or medications. ROA.110. Further, those records show that there were no upcoming appointments scheduled. ROA.110. The district court relied upon these records and denied DuBose's motion for preliminary injunction. ROA.123.

On June 25, 2024, Magistrate Judge Kayla McClusky completed an initial review of DuBose's various complaints and recommended dismissal of all claims and parties, with the exception of three claims against Campbell and DuBose, those being: (1) Campbell and Norman's

alleged deliberate denial and/or delay of medical treatment for DuBose's detached focus lens, (2) Norman's alleged refusal to allow DuBose to see a visiting doctor following his elbow/arm injury on February 25, 2023, and (3) Norman's alleged denial of surgery following a physician's surgical recommendation on March 21, 2024.  ROA.155.

## B.    Campbell and Norman move for summary judgment.

On June 27, 2025, Campbell and Norman moved for summary judgment arguing (1) DuBose failed to exhaust his administrative remedies relative to a denial of medical care for his arm/elbow, (2) neither Campbell nor Norman were deliberately indifferent to any of DuBose's medical needs, and (3) DuBose did not have a valid claim for delayed medical care of his elbow.  ROA.68.  In response, DuBose filed what the district court identified as a "flurry of memoranda," several motions, including a Rule 56(d) motion, a motion for copies, and a motion to supplement his earlier opposition and file additional documents. ROA.396; ROA.418; ROA.385; ROA.421.  During this period of DuBose's flood of filings, Campbell and Norman filed a reply brief in support of their motion for summary judgment on August 11, 2025. ROA.447. After this filing DuBose filed another Supplement to Plaintiff's Opposition to

Defendants' Motion for Summary Judgment, an additional Statement of Uncontested Material Facts and Declaration, and yet another Supplement to Plaintiff's Opposition to Defendants' Motion for Summary Judgment.  ROA.468; ROA.491; ROA510.

**C.**   **THE DISTRICT COURT DISMISSES DUBOSE'S CLAIM AGAINST NORMAN FOR DENIAL OF AN ARM/ELBOW SURGERY, BUT DENIES CAMPBELL AND NORMAN QUALIFIED IMMUNITY ON DUBOSE'S OTHER DENIAL OF MEDICAL CARE CLAIMS**

On February 25, 2026, the magistrate udge issued her Report and Recommendation recommending that Appellants' motion for summary judgment be granted in part and denied in part.  ROA.526-553 (Report and Recommendation).  More specifically, the magistrate judge recommended that DuBose's claim for a delayed arm/elbow surgery in 2024 against Norman be dismissed with prejudice.  ROA.550-551.  But the magistrate judge did not find that Campbell and Norman were entitled to qualified immunity relative to DuBose's allegedly delayed medical treatment for a detached focus lens or DuBose's claim that Norman prevented him from seeing a physician following his February 2023 injury to his arm/elbow.  ROA.543-551.

On March 5, 2026, Campbell and Norman timely filed their Objection to the Report and Recommendation.  ROA.561-569.  In that

filing, Campbell and Norman argued that (1) the Magistrate Judge did not identify any evidence to contradict Norman's testimonial assertion that she did not prevent DuBose from seeing a visiting doctor regarding his elbow pain but, instead, relied upon speculation in denying Appellants' summary judgment on that issue, (2) neither Campbell nor Norman knew that a substantial risk of harm existed and drew the inference, and (3) DuBose failed to identify clearly established law to rebut Appellants' qualified immunity defense. ROA.562-568.

On March 19, 2025, the District Court adopted the Report and Recommendation of the Magistrate Judge and issued a Judgment dismissing DuBose's claim for a delayed/arm elbow surgery in 2024 and otherwise denying the remainder of Appellants' motion for summary judgment, finding that genuine disputes of materal fact precluded summary judgment as to the remaining claims. ROA.572.

## SUMMARY OF THE ARGUMENT

The district court erred in denying qualified immunity to Donna Norman on DuBose's claim that she delayed medical treatment for his arm or elbow injury. Even accepting DuBose's version of events, he did not identify evidence showing that Norman subjectively knew he faced a

substantial risk of serious harm or that she personally denied or intentionally delayed his treatment. DuBose's allegation that Nurse Greer told him he had been refused access to a visiting physician neither identifies Norman as the person responsible nor establishes Norman's personal involvement. Because § 1983 liability must rest on each defendant's own conduct, those allegations are legally insufficient to overcome Norman's qualified immunity.

The district court likewise erred in denying qualified immunity to Warden Paul Campbell on DuBose's claim concerning delayed treatment for his detached focus lens. The facts identified below—that DuBose directed an administrative grievance to Campbell, that Campbell could access inmate grievances and medical records, and that DuBose allegedly sent documents to him—do not establish that Campbell actually received or reviewed those materials, knew of a substantial risk to DuBose's health, or personally disregarded that risk. Indeed, the grievance on which the district court relied was answered by another official. Even assuming DuBose's allegations are true, they do not demonstrate the personal knowledge and deliberate indifference necessary to impose individual liability under § 1983.

Finally, the district court erred in denying Appellants qualified immunity relative to DuBose's claim that they delayed treatment relative to DuBose's alleged eye surgery. The primary basis of DuBose's optical claim is that Norman "denied [DuBose] surgery following a physician's surgery recommendation on March 21, 2024." ROA.155; ROA.528. However, *both* Appellants testified that they were not only unaware of any surgery but, relying upon the medical records generated by Dr. Chase Wilson, Donna Norman reasonably believed that no surgery had been scheduled. ROA.444-446. This was, in part, the basis for her invocation of qualified immunity as to that specific claim.

DuBose was then required to provide jurisprudence showing that Appellants violated clearly established law defined at the appropriate level of specificity. He not only failed to do so, but the district court applied overly broad jurisprudence to what is a very narrow issue; namely, was Appellants' alleged "failure" to transport DuBose to a surgery they had no reason to believe had been scheduled a clearly established violation of DuBose's constitutional rights? Instead, the district court expanded not only the nature of DuBose's claims but its own representation as to what those claims entailed by *sua sponte*

amending DuBose's optical claim to encompass Appellants purportedly "ignoring and refusing to credit DuBose's continued complaints of pain and discomfort in his lone, remaining eye." ROA.548.

This interlocutory appeal presents legal questions concerning the materiality of the facts assumed by the district court, not the genuineness of factual disputes. Those assumed facts are insufficient as a matter of law to overcome Appellants' invocation of qualified immunity. Appellants therefore respectfully request that the Court reverse the district court's denial of qualified immunity on DuBose's remaining claims.

## STANDARD OF REVIEW

A district court's denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine to the extent it turns on an issue of law. *Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir. 2004). As such, this Court lacks jurisdiction to review the genuiness of a factual issue but has jurisdiction to the extent an interlocutory appeal challenges the materiality of the factual issues. *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016). The materiality of such factual issues are reviewed *de novo*. *Lemoine v. New Horizons Ranch & Ctr., Inc.*, 174 F.3d 629, 634 (5th Cir. 1999). Where a

district court has identified a factual dispute, this Court asks whether the prison official is entitled to summary judgment even assuming the accuracy of the plaintiff's version of the facts. *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc).

## ARGUMENT

Here, both Campbell and Norman invoked qualified immunity in the underlying motion for summary judgment. Once a government official raises qualified immunity from a § 1983 claim, the burden shifts to the plaintiff to rebut the defense. *Ramirez v. Escajeda*, 44 F.4th 287, 290 n. 4 (5th Cir. 2022) (cleaned up). "To satisfy this burden and overcome qualified immunity, the plaintiff must satisfy a two-prong test." *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc) (quoting *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016)). First, the plaintiff must show that the defendant violated the plaintiff's constitutional rights. *Taylor v. LeBlanc*, 60 F.4th 246, 250 (5th Cir. 2023) (quoting *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011)). Second, the plaintiff must show the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation. *Id*. The second prong of the qualified immunity analysis "is better understood as two

separate inquiries; whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Taylor*, 60 F.4th at 251 (quoting *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir. 1988)).

Those first and second prongs may be considered in any order the Court chooses. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Notably, if the plaintiff fails to overcome either prong, the defendant is entitled to qualified immunity. *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019). DuBose bears the burden to "demonstrate the inapplicability of the defense" as to each defendant. *Rogers v. Jarrett*, 63 F.4th 971, 975 (5th Cir. 2023) (cleaned up). Each defendant's entitlement to qualified immunity must be addressed separately. *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 325, n. 7 (5th Cir. 2020) (citing *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018); *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007)). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation"

15

will not suffice to defeat qualified immunity at the summary judgment stage. *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## I. ASSUMING THE FACTS ALLEGED BY DUBOSE ARE TRUE, THEY ARE INSUFFICIENT FOR DENYING NORMAN QUALIFIED IMMUNITY RELATIVE TO DUBOSE'S CLAIM FOR DELAYED MEDICAL TREATMENT FOR HIS BROKEN ARM/ELBOW IN FEBRUARY 2023

To overcome the first prong of Norman's qualified immunity defense, DuBose must allege facts sufficient to show that Norman was deliberately indifferent to DuBose's constutional rights. *Porter*, 659 F.3d at 446. Because vicarious liability does not exist under § 1983, the focus is on Norman's alleged knowledge and conduct. *Ashcroft v. Iqbal*, 556 U.S. 662 , 676 (2009) ("[A] plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the Constitution."). Thus, the allegations must establish that Norman was both subjectively aware that DuBose was in need of medical assistance relative to his arm/elbow and either denied him treatment or intentionally delayed it.

A delay in medical treatment can constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (per curiam). Thus, in the context of a claim against a prison official for the

denial of medical care, the plaintiff must show (1) tt he was exposed to a substantial risk of serious harm, (2) that the defendant subjectively knew of this substantial risk, (3) that the defendant denied or delayed medical treatment, and (4) that the denial of or delay in treatment resulted in substantial harm. *See Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019).

DuBose has not alleged with any degree of specificity or in a manner free of speculation that Donna Norman delayed medical treatment relative to his arm or elbow *or* that he was experiencing a serious medical need. DuBose alleged that he injured his elbow in a physical altercation with another inmate on February 25, 2023. ROA.134. DuBose, who is not a medical professional, then "surmised that his arm was fractured at the elbow" and requested a sick call on February 27, 2023. ROA.134. DuBose saw OCC Nurse Brandi Greer on March 1, 2023, who told DuBose that _**she**_ had scheduled him to see a visiting doctor. ROA.134. However, according to DuBose his appointments to see the visiting doctor were rescheduled. ROA.134.

On March 7, 2023, DuBose submitted a Health Care Request Form asking to be examined by the visiting doctor for swelling in his

elbow/arm. ROA.226. On that form, DuBose wrote "head nurse denied visiting doctor." ROA.226. On March 9, 2023, Nurse Greer allegedly told DuBose that he "had been refused from seeing visiting doctor[.] [sic.]." ROA.134. At no point does DuBose show that Norman had subjective knowledge that he was in substantial risk of serious harm relative to his elbow/arm *or* that Norman delayed his medical treatment in a non-conclusory or speculative manner or in a manner that satisfies the summary judgment evidentiary standard. Despite this fact, the district court surmised:

> However, DuBose has adduced evidence to the contrary. *See* discussion, *supra*. Indeed, Nurse Greer told him that he had been refused to see the visiting doctor. If Nurse Greer did not prevent access, then the most likely suspect was Nurse Greer's superior, i.e., Nurse Norman, as DuBose contends. Of course, after April 2023, DuBose's requests to see a doctor about his possibly broken/fractured arm tapered off, no doubt because the swelling had subsided as the fracture healed, albeit out of place.

ROA.550.

For the purposes of this appeal, Norman is not challenging the genuiness of DuBose's assertion that "Nurse Greer told him that he had been refused to see a visiting doctor."[1] But even if this allegation is true,

---

[1] Again, Appellants appreciate that they cannot contest the genuiness of any fact relied upon by the district court in ruling on their motion for summary judgment. However, it does bear

it can not serve as the basis for denying Norman qualified immunity. A plaintiff seeking to overcome qualified immunity "must specifically identify each defendant's personal involvement in the alleged wrongdoing." *Jimerson v. Lewis*, 94 F.4th 423, 428 (5th Cir. 2024) (cleaned up). Here, Nurse Greer—and not Donna Norman—allegedly told DuBose that he was not allowed to see a visiting doctor and, even then, Nurse Greer did not identify Donna Norman as the person preventing him from seeing that doctor. Nurse Greer's alleged statement cannot serve to deny Norman qualified immunity relative to DuBose's claim for delayed medical treatment on his arm/elbow.

## II. ASSUMING THE FACTS ALLEGED BY DUBOSE ARE TRUE, THEY ARE INSUFFICIENT FOR DENYING PAUL CAMPBELL QUALIFIED IMMUNITY RELATIVE TO DUBOSE'S CLAIM FOR DELAYED MEDICAL TREATMENT FOR HIS DETACHED FOCUS LENS

DuBose has effectively alleged that both Paul Campbell and Donna Norman were deliberately indifferent to his alleged need for optical care on his left eye by delaying treatment after February 7, 2023, when

---

mentioning that DuBose has provided nothing of evidentiary value to show either Appellant denied or delayed his medical treatment. Donna Norman submitted an executed Affidavit where in she affirmatively stated she "did not deliberately delay or deny [DuBose] medical treatment of any sort at any time including, but not limited to, any surgery." ROA.454. DuBose's conclusory and speculative assertions carry the same weight as his allegations that Appellants—or undersigned counsel—altered his medical records, a proposition that the district court rejected. ROA.543-544.

DuBose was seen by ophthalmologist Chase Wilson. Without much explanation, the district court appears to have found that Campbell was deliberately indifferent to DuBose's optical medical need such that Campbell's qualified immunity invocation was denied.

Again, for the purpose of this appeal, this Court does not have jurisdiction to determine "whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995); *see also Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010) ("[T]he district court's finding that a *genuine* factual dispute exists is a factual determination that this court is prohibited from reviewing in this interlocutory appeal."). However, "[w]hen a district court fails to set forth the factual disputes that preclude granting summary judgment, we may be required to review the record in order 'to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed.'" *Kinney*, 367 F.3d at 348 (quoting *Johnson*, 515 U.S. at 319).

Here, the district court relied upon immaterial allegations in denying Campbell qualified immunity. First, the district court represented that on November 5, 2023, DuBose submitted an ARP regarding his eye issue, directed to Campbell. ROA.544-545; ROA.150.

However, as noted by the district court, that ARP was answered by Captain Chris Jerkins.  ROA.545; ROA.150.  The record is devoid of any evidence of showing that Warden Campbell reviewed or was even aware of the existence of that ARP.  The magistrate judge's Report and Recommendation does not identify any evidence to show this to be the case.  Thus, even if DuBose submitted an ARP to Warden Campbell which was received and responded to by Captain Jerkins, this is immaterial to the issue of whether Campbell should be afforded qualified immunity as to DuBose's claim for delayed optical medical care.

Next, DuBose alleges that

\*      \*      \*

21.     As the Head Warden of "OCC," <u>Paul Campbell</u> has access to any and all documents, including Plaintiff's multiple grievance complaints about him being denied or rescheduled for medical treatment.  {See Plaintiff's Opposition and "<u>Exhibit-D</u>" attached thereto.

and

22.     As the Head Warden at "OCC," <u>Paul Campbell</u> has access to all information flowing in and out of "OCC," including Plaintiff's medical records and grievance complaints.

But, again, assuming DuBose's allegations are true, Campbell's mere ability to access DuBose's grievances and medical records, or DuBose's alleged

transmission of documents to Campbell, does not show that Campbell *actually* reviewed those documents, such that he was aware of DuBose's alleged medical needs.[2]  Assuming DuBose's allegations against Campbell are true, they are insufficient for the purpose of denying him qualified immunity in this matter.

### III. APPELLANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEIR CONDUCT WAS OBJECTIVELY REASONABLE IN LIGHT OF CLEARLY ESTABLISHED LAW DEFINED AT THE APPROPRIATE LEVEL OF SPECIFICITY.

The district court found DuBose's assertion regarding the November 5, 2023 ARP, which was answered by Corporal/Nurse Wilson and not Norman, sufficient to create a genuine issue of material fact that Norman knew of his ongoing eye complaints and did nothing.  ROA.547-548.  However, in doing so, the district court expanded the nature of DuBose's claim despite having previously and appropriately limiting its contours to what was repeatedly asserted in DuBose's pleadings; namely, whether Norman "denied [DuBose] surgery following a physician's

---

[2] Speaking frankly, it follows that any prison official at OCC would conceivably have access to DuBose's inmate file.  However, DuBose would certainly not state a valid cause of action against Sheriff Neal Harwell if DuBose were to prepare a grievance directed to the Sheriff in the absence of any indication that the grievance was reviewed by him. *See Thomas v. Gilley*, Civil Action No. 3:22-06174, at *9 (W.D.La. Sept. 20, 2023) (McClusky, K.) ("The court acknowledges that the FARC includes an allegation that family members 'reached out' to the Sheriff and the Wrden to explicitly tell them that Mr. Richardson needed to be teransferred to another facility for medical care…[however,] the FARC falls pointedly short of saying that the family members actually succeeded in discussing the matter with [the Sheriff and the Warden]."

surgery recommendation on March 21, 2024." ROA.155; ROA.528. The district court's initial representation of the nature of DuBose's optical claim was the correct one and is the claim that controlled the underlying litigation, to include the content of Appellants' MSJ, and this appeal.

Even if this Court were to find Appellants violated Appellee's rights under the Eighth Amendment, Appellants are still entitled to qualified immunity unless Appellee can show their conduct was objectively unreasonable in light of clearly established law at the time of the conduct in question. *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (cleaned up). Stated another way, Appellants should be awarded qualified immunity unless the law was so clear that every reasonable officer would have known, under the circumstances, that what he either did or failed to do violated the Constitution. *Salazar v. Molina*, 37 F.4th 278, 286 (5th Cir. 2022) (cleaned up). In considering the question whether Appellants' actions were objectively unreasonable in light of clearly established law, this Court must "frame the constitutional question specificity and granularity." *Morrow v. Meachum*, 917 F.3d 870, 874-75 (5th Cir. 2019). In fact, "the clearly established law must be particularized to the facts of the case." *Nevarez v. Dorris*, 135 F.4th 269,

23

275 n.6 (5th Cir. 2025) (cleaned up).  The district court failed to follow these legal tenets when conducting its qualified immunity analysis.

### A.   THE DISTRICT COURT ERRED BY FRAMING CLEARLY ESTABLISHED LAW TOO BROADLY.

The Supreme Court has repeatedly cautioned lower courts "not to defined clearly established law at too high a level of generality."  *City of Tahlequah, Oklahoma v. Bond*, 142 S.Ct. 9, 11, 211 L.Ed.2d 170 (2021) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)).  "It is not enough that a rule be suggested by then-existing precedent; the 'rules contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  *Id.* (quoting *District of Columbia v. Wesby*, 138 S.Ct. 577, 590, 199 L.Ed.2d 565 (2018)). As such, when evaluating qualified immunity, courts must look beyond broad constitutional guarantees and focus instead on whether officials have received "particularized" notice that "their conduct [was] unlawful."  *City & Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 613, 135 S.Ct. 1765, 191 L.Ed.2d 856 (2015). "As [the Fifth Circuit] has explained many times, that takes showing that 'the violative nature of *particular* conduct was clearly established.'  It just isn't enough to identify a right as 'a broad general proposition.'"  *Rogers*, 63 F.4th at

977 (emphasis court's) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). "Unless existing precedent 'squarely governs' the conduct at issue, an official will be entitled to qualified immunity." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (citing *Brosseau v. Haugen*, 543 U.S. 194, 201, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam); *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (emphasizing that "[t]he dispositive question is whether the violative nature of particular conduct is clearly established" (internal quotation marks and citation omitted)).

In order to adequately rebut Appellants' invocation of qualified immunity, as set forth in their motion for summary judgment, Appellee was required to identify and present a case where a law enforcement official acting under similar circumstances was held to have committed a constitutional violation and explain why that individual official's conduct was clearly proscribed. *Cope*, 3 F.4th at 205 (citing *Joseph ex rel. Estate of Joseph*, 981 F.3d at 345) (concluding the defendants were entitled to qualified immunity because the plaintiffs failed to identify an analogous case). Although DuBose is not required to identify an exact case on point, "existing precedent must have placed the statutory or constitutional

25

question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104, 138 S. Ct. 1148, 200 L.Ed.2d 449 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 79, 137 S. Ct. 548, 551, 196 L.Ed.2d 463 (2017)). Not only did DuBose fail to satisfy this burden, but the district court confirmed the absence of such law when it not only failed to identify particularized law on point, but expanded the parameters of DuBose's claim to something much broader.

It was not objectively unreasonable for Appellants to believe no surgical intervention was necessary when considering DuBose's medical records did not identify any such surgery and Appellants were not told by any medical provider that surgery was necessary. This is particularly true considering DuBose's February 24, 2024 offer to Nurse Donna Norman:



ROA.122.

DuBose was willing to stop complaining about what he has continuously represented as an urgent need for medical care as leverage to get moved to a different dorm in OCC.  ROA.122.  Not even DuBose provided Appellants with a trustworthy reason to believe that any surgical order existed.

## CONCLUSION

This Court should reverse the district court and hold that Appellants are entitled to qualified immunity on DuBose's remaining claims and dismiss his claims with prejudice.

Respectfully Submitted by:

*/s/ Jason P. Wixom*
**Jason P. Wixom (LSBN 32273)**
**RODRIGUE & ARCURI, LLP**
1615 Poydras St., Ste. 1250
New Orleans, LA 70112
Phone:        (504)592-4600
Fax:            (504)592-4641
Email:        jason@rodriguearcuri.com
***Counsel for Defendants-Appellants***
***Warden Paul Campbell and Nurse***
***Donna Norman***

28

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing pleading was this date electronically filed with the Clerk of Court using the Court's CM/ECF system. Notice of this filing will be sent to all parties and/or counsel of record, who are identified as follows, by operation of the Court's electronic filing system and/or by this date depositing same in the United States Mail, first class postage prepaid, and sent to their last known address:

1. Mr. Samuel Weiss, counsel for Plaintiff-Appellee, Waler DuBose, at sam@rightsbehindbars.org.

New Orleans, Louisiana, this 13th day of August, 2026.

*/s/Jason P. Wixom*
JASON P. WIXOM (LSBN 32273)

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Pursuant to 5th Cir. R. 32.2 and 32.3, the undersigned certifies that this Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7).

1.   EXCLUSIVE OF THE EXEMPTED PORTIONS IN 5th Cir. R. 32.2, THE BRIEF CONTAINS:

    A.   __5,048__ Words; OR

    B.   __N/A__ Lines of text in monospaced typeface.

2.   THE BRIEF HAS BEEN PREPARED:

    A.   in proportionally spaced typeface using:  Software Name and Version: Microsoft Word for Office 365 in Century Schoolbook, 14 point font.

    B.   in monospaced (nonproportionally spaced) typeface using: __N/A__ Typeface name and number of characters per inch: __N/A__

3.   THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETION THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN Fed. R. App. P. 32(a)(7), MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

New Orleans, Louisiana, this 13th day of August, 2026.

*/s/Jason P. Wixom*
JASON P. WIXOM (LSBN 32273)

## CERTIFICATE OF COMPLIANCE WITH RULE 25.2

Pursuant to Section A(6) of the Court's ECF Filing Standards, updated April 11, 2017, undersigned counsel certifies that (1) no privacy redactions were required, and thus, none were made; (2) the electronic submission is an exact copy of the paper document, and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

New Orleans, Louisiana, this 13th day of August, 2026.

*/s/Jason P. Wixom*
JASON P. WIXOM (LSBN 32273)