**No. 26-30199**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

WALTER ALLEN DUBOSE,

*Plaintiff-Appellee,*

v.

PAUL CAMPBELL, WARDEN; DONNA NORMAN, NURSE,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Louisiana
No. 3:24-cv-00120
Hon. David C. Joseph

---

# APPELLEE'S ANSWERING BRIEF

---

Samuel Weiss
Rights Behind Bars
1800 M Street NW, Front 1 #33821
Washington, DC 20033
202-455-4399
sam@rightsbehindbars.org

*Attorney for Plaintiff-Appellee Walter Allen DuBose*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Walter Allen DuBose, Plaintiff-Appellee;
Paul Campbell, Defendant-Appellant;
Donna Norman, Defendant-Appellant;
Louisiana Sheriff's Law Enforcement Program, an inter-local risk management fund created pursuant to statutory authority;
Jason P. Wixom, Laura Rodrigue, and Blake J. Arcuri of Rodrigue & Arcuri, LLP, current and/or former counsel for Defendants-Appellants;
Samuel Weiss of Rights Behind Bars, counsel for Plaintiff-Appellee;
David C. Joseph, U.S. District Judge;
Kayla D. McClusky, U.S. Magistrate Judge.

/s/ Samuel Weiss

## STATEMENT REGARDING ORAL ARGUMENT

This Court does not need to hold oral argument as Defendants' principal arguments are outside this Court's limited jurisdiction. If this Court decides to address the question that Appellants have failed to ask—whether they are entitled to qualified immunity as a pure question of law, accepting the district court's facts—Appellee would appreciate the opportunity to present oral argument to explain why Defendants' constitutional violations were "clearly established."

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ...............................................ii

TABLE OF CONTENTS ..................................................................................... iii

TABLE OF AUTHORITIES ...............................................................................v

JURISDICTIONAL STATEMENT.........................................................................1

STATEMENT OF THE ISSUES.............................................................................2

STATEMENT OF THE CASE ...............................................................................2

A. Factual Background.......................................................................................2

B. Procedural History .........................................................................................8

SUMMARY OF THE ARGUMENT......................................................................9

ARGUMENT ........................................................................................................11

I. Defendants' First Two Arguments Challenge the Genuineness of the District Court's Factual Disputes and Are Therefore Outside this Court's Jurisdiction.................................11

a) DuBose's elbow injury ..........................................................12

b) DuBose's eye injury ..............................................................15

II. Defendants' Clearly Established Law Argument Does Not Warrant Reversal. .......................................................................17

a) Forfeiture ...............................................................................18

b) Jurisdiction ...........................................................................19

c) Even if this Court were to analyze the step-two qualified immunity question on de novo review, this Court should still affirm. .........................................................20

CONCLUSION .....................................................................................................24

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415 (5th Cir. 2017) .......... 23

*Ambler v. Nissen*, 116 F.4th 351 (5th Cir. 2024) .......... 2 n.1

*Austin v. Johnson*, 328 F.3d 204 (5th Cir. 2003) .......... 23

*Behrens v. Pelletier*, 516 U.S. 299 (1996) .......... 1, 15

*Cupit v. Whitley*, 28 F.3d 532 (5th Cir. 1994) .......... 18

*Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752 (5th Cir. 2001) .......... 23

*Easter v. Powell*, 467 F.3d 459 (5th Cir. 2006) .......... 10, 11, 21, 22, 23, 24

*Estelle v. Gamble*, 429 U.S. 97 (1976) .......... 23

*Eugene v. Deville*, 791 F. App'x 484 (5th Cir. 2020) .......... 22

*Farmer v. Brennan*, 511 U.S. 825 (1994) .......... 13

*Finley v. Johnson*, 243 F.3d 215 (5th Cir. 2001) .......... 18

*Gonzales v. Dallas Cnty., Tex.*, 249 F.3d 406 (5th Cir. 2001) .......... 17

*Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999) .......... 10, 21, 23, 24

*Johnson v. Jones*, 515 U.S. 304 (1995) .......... 14, 15

*Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004) (en banc) .......... 1, 2 n.1, 11

*Sims v. Griffin*, 35 F.4th 945 (5th Cir. 2022) .......... 11, 13, 22, 23, 24

*Smith v. Brenoettsy*, 158 F.3d 908 (5th Cir. 1998) .......... 14

## Constitutional Provisions

U.S. Const. amend. VIII .......... 1, 9, 10, 11, 21, 22, 23

## Statutes

28 U.S.C. § 1331 .......... 1

28 U.S.C. § 1343(a)(3) ........................................................................................1

42 U.S.C. § 1983

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because DuBose brought claims under 42 U.S.C. § 1983 for violations of the Eighth Amendment. The district court partially granted and partially denied Defendants' motion for summary judgment. ROA.572. DuBose agrees that Defendants timely appealed the district court's order partially denying their motion for summary judgment on the basis of qualified immunity. Because this is an interlocutory appeal, this Court has jurisdiction "only to the extent that the appeal concerns the purely legal question whether the defendants are entitled to qualified immunity on the facts that the district court found sufficiently supported in the summary judgment record." *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004) (en banc) (citing *Behrens v. Pelletier*, 516 U.S. 299, 312–13 (1996)). In this limited and interlocutory posture, this Court "cannot challenge the district court's assessments regarding the sufficiency of the evidence—that is, the question whether there is enough evidence in the record for a jury to conclude that certain facts are true." *Id.* Because a district court does "not (and could not be expected to) discuss every aspect of the conflicting evidence," this Court determines "what facts the district court, in the light most favorable to the nonmoving party, likely assumed" and limits its jurisdiction to those factual inferences. *Id.* at 348 n.12 (cleaned up).

## STATEMENT OF THE ISSUES

I. Whether this Court has jurisdiction in this interlocutory posture over Defendants' arguments that question or ignore the district court's factual inferences.

II. Whether this Court should dismiss this appeal or affirm the district court upon reaching Defendants' argument that addresses step two of qualified immunity.

## STATEMENT OF THE CASE[1]

*A. Factual Background*

Walter DuBose is a Louisiana Department of Corrections prisoner. He was held at the Ouachita Correctional Center from August 2020 until July 1, 2024. ROA.526. Defendant Paul Campbell was OCC's warden. ROA.540. Defendant Donna Norman, a registered nurse, was OCC's medical director. ROA.538. Under OCC's grievance procedure, the medical director is the step-one respondent for medical complaints. ROA.548.

[1] The district court adopted the Report and Recommendation after "a de novo review of the record, finding that the Magistrate Judge's Report and Recommendation [Doc. 102] is correct." ROA.572. Following the lead of this Court and Defendants, Appellee will refer to the Report and Recommendation as "the district court's" opinion. *See Ambler v. Nissen*, 116 F.4th 351, 356 n.2 (5th Cir. 2024); *see also, e.g.*, Op. Br. 20 (writing "the district court represented that…," referring to the Report and Recommendation). Consistent with the limits on this Court's interlocutory jurisdiction, the facts below are those the district court found or assumed, viewing the record in the light most favorable to DuBose. *See Kinney*, 367 F.3d at 348.

DuBose has one eye. ROA.527, 548. He received a focus lens in that eye in 2017, but the lens "came undone." ROA.528. On February 7, 2023, OCC sent DuBose to an ophthalmologist, Dr. Chase Wilson. ROA.527, 541. According to DuBose, Dr. Wilson found that the lens was detached and told him that "a surgical procedure was needed on [his] left eye." ROA.541. While DuBose was still in the examination room, Dr. Wilson called another physician, Dr. Cavanaugh, discussed his findings and the "plan of further treatment," and then told DuBose he would be seen by Dr. Cavanaugh in roughly two weeks. ROA.541. Because DuBose was incarcerated, Dr. Wilson could not give him an exact date. ROA.541–42. DuBose was not allowed to see the after-visit paperwork given to OCC staff. ROA.541.

About a week after the appointment, DOC transferred DuBose to the Madison Parish Correctional Center. ROA.546. When DuBose told officials there that he had been scheduled for treatment at Ochsner LSU Health–Shreveport, they confirmed that he had and sent him back to OCC the next day. ROA.546–47. The district court observed that this "begs the question why Defendants were unwilling to do the same and confirm that DuBose had further treatment scheduled." ROA.547. "Instead, they turned a deaf ear to his repeated entreaties and simply relied on his [after-visit summary]." *Id.*

DuBose filed a grievance, writing that he needed to be transferred because he had been scheduled to be seen at LSU-Shreveport, that he had sent multiple notes to

the warden, and that Nurse Norman was "backlogging it." ROA.544. Captain Chris Jerkins rejected the grievance as a "request." *Id.* On August 12, 2023, DuBose submitted a health-care request stating that he needed surgery because the lens in his left eye was still floating unattached, that he had eye pain and discomfort, and that he wanted to be "sent on for surgery." ROA.544. No one responded. *Id.* On November 5, 2023, he submitted another health-care request reporting pain and discomfort from the dislodged lens and stating that he still needed surgery and had been scheduled for treatment at LSU-Shreveport. ROA.544–45. The same day, he filed a grievance explaining that he had been asking to be sent to LSU-Shreveport ever since he saw the eye specialist, that the lens had been detached for three years, and asking why he had not been sent. ROA.545. It ended: "[y]ou are contributing to [the] loss of my only eye, Warden Campbell." *Id.* A nurse responded that DuBose had been seen on February 7, 2023, "with no follow up appointments until 2024," and told him to fill out a sick-call request. *Id.*

DuBose also sent notes to the Warden about his eye and his scheduled LSU-Shreveport appointment; the grievances he sent to the Warden's office he never saw again. ROA.547–48. DuBose stated that any response to a medical grievance, even one signed by another nurse, came from the head of medical, and that the response to his grievance was "all Nurse Norman." ROA.547–48.

OCC did not arrange another ophthalmology appointment for DuBose before his transfer. ROA.545. About six weeks after his transfer to another facility, that facility took DuBose to LSU-Shreveport. ROA.545. A physician there explained that the arms of the lens device were causing the pain and discomfort he had been experiencing. ROA.545–46. He underwent eye surgery on September 26, 2024. ROA.546. He attributes severe scarring and glaucoma to the delay. ROA.548. As the district court put it, DuBose's new facility "credited his complaints of eye pain and his professed need for surgery and transported him to an ophthalmology appointment where it was confirmed that he needed surgery." ROA.546.

The district court found "evidence that Norman knew of DuBose's ongoing eye complaints and their serious implications but did nothing." ROA.548. DuBose "made his concerns known to Defendants via repeated sick call requests and ARPs, one of which included a direct plea to Warden Campbell." ROA.547. The court concluded that there is "a genuine dispute of material fact as to whether Defendants were deliberately indifferent to a substantial risk of serious harm by ignoring and refusing to credit DuBose's continued complaints of pain and discomfort in his lone, remaining eye." ROA.548. Although the after-visit summary from his February visit did not specifically list any upcoming appointments, the court was "not persuaded that Defendants may continue to rely on the document for over one year in the face

of DuBose's repeated representations that his eye was bothering him and that he required eye surgery." ROA.544.

On February 25, 2023, DuBose injured his elbow. He believed it was fractured and requested a sick call on February 27. ROA.549. On March 1, a nurse, Greer, told him she had scheduled him to see a visiting doctor. *Id.* His appointments were rescheduled twice. *Id.*

On March 7, 2023, DuBose submitted a health-care request asking to be examined for swelling in the injured arm and stating that the head nurse had prohibited him from seeing the doctor. ROA.549. On March 9, Nurse Greer told him he "had been refused for seeing visiting doctor." *Id.* On March 20, he submitted another request, stating that the arm felt broken. *Id.* That request was ignored. *Id.*

On April 18, 2023, DuBose filed a grievance stating that he still had not seen a doctor or been sent to the hospital, that the arm felt broken, that his sick-call requests were being ignored, and that Nurse Norman had rescheduled his sick-call appointments twice. ROA.549. Captain Jerkins rejected it as a "request." *Id.*

DuBose did not see a doctor for over a year, and the parties dispute whether Nurse Norman was responsible. She denied rescheduling DuBose's appointments, denied responsibility for scheduling, and denied preventing him from seeing a doctor. ROA.539–40, 549–50. DuBose stated that Norman, as medical director and head nurse, had the authority to schedule and reschedule appointments or to direct

another nurse to do so. ROA.542. The district court found that "DuBose has adduced evidence to the contrary" of Norman's denials. ROA.550. "Indeed, Nurse Greer told him that he had been refused to see the visiting doctor. If Nurse Greer did not prevent access, then the most likely suspect was Nurse Greer's superior, i.e., Nurse Norman, as DuBose contends." *Id.*

DuBose's requests tapered off after April 2023 as the swelling subsided and the fracture healed, although it healed out of place. ROA.550. When he injured the arm again in February 2024, he was allowed to see the visiting physician, who sent him for x-rays. ROA.550. On March 21, 2024, a physician told DuBose that his elbow was broken and that he needed surgery to re-break the bone, which had "healed out of place," and install a plate. *Id.* DuBose still cannot hold the arm straight, and it "gives out." ROA.529, 550.

The district court found "a genuine dispute of material fact as to whether Nurse Norman was deliberately indifferent to a substantial risk of serious harm by refusing and ignoring DuBose's repeated requests to see a physician following his February 2023 [injury] to his arm/elbow." ROA.550.

### *B. Procedural History*

DuBose filed this *pro se* § 1983 suit in January 2024. ROA.526. On initial screening, the court allowed three claims to proceed against Campbell and Norman: 1) that they denied or delayed treatment for his detached lens; 2) that Norman

prevented him from seeing a visiting doctor after his February 2023 elbow fracture; and 3) that Norman denied him surgery after the March 21, 2024 surgical recommendation. ROA.527–28.

After discovery closed, Defendants moved for summary judgment on qualified immunity. ROA.530. They argued that DuBose lacked a viable claim for denial of medical care and had failed to exhaust his elbow claim; they later withdrew the exhaustion argument. ROA.530, 533. On the second prong of qualified immunity, Defendants conceded in their motion "that DuBose had a clearly established right to medical care." ROA.551.

The magistrate judge recommended granting the motion as to the 2024 surgery claim and denying it as to the eye and 2023 elbow claims. ROA.550–52. On the first prong, the court found genuine disputes of material fact on both surviving claims, as described above. ROA.548, 550. On the second, it relied on Defendants' concession and on case law establishing, "by 2023," that delay in medical care can violate a clearly established right. ROA.551–52.

Defendants objected. ROA.561–69. The district court, "after a de novo review of the record," found the report and recommendation "correct," adopted it, dismissed the 2024 surgery claim, and otherwise denied summary judgment, "[f]inding genuine disputes of material fact preclude summary judgment as to the remaining claims." ROA.572. Defendants filed this interlocutory appeal. ROA.587–88.

## SUMMARY OF THE ARGUMENT

Defendants' appeal principally asks this Court to do something it lacks jurisdiction to do: revisit the district court's assessment of the evidence and substitute Defendants' preferred factual inferences for those the district court drew in DuBose's favor. The district court found genuine disputes of material fact on two Eighth Amendment claims. First, a reasonable jury could find that Nurse Norman deliberately prevented DuBose from seeing a physician after he fractured his elbow, causing the fracture to heal improperly. Second, a reasonable jury could find that both Norman and Warden Campbell knew of DuBose's serious medical needs concerning his only remaining eye but ignored his repeated complaints of pain and requests for necessary follow-up treatment for more than a year. The district court accordingly denied qualified immunity on both claims.

Defendants' first two arguments challenge the genuineness of these factual disputes, not their legal significance. Norman contends that there was insufficient evidence that she knew of DuBose's elbow injury or was responsible for preventing him from seeing a physician. Campbell likewise disputes that he knew of DuBose's serious eye condition, and both Defendants insist that their reliance on an ophthalmologist's after-visit summary was reasonable. But those are factual arguments. The district court found sufficient evidence from which a jury could conclude that Norman personally interfered with DuBose's elbow treatment and that

both Defendants knowingly disregarded the serious medical needs of his remaining eye. This Court lacks interlocutory jurisdiction to reconsider whether the evidence supports those findings.

Defendants' remaining argument—that the district court defined the clearly established right at too high a level of generality—likewise fails. Defendants made no developed argument at summary judgment that their alleged conduct did not violate clearly established law. Instead, they expressly acknowledged DuBose's clearly established constitutional right to medical care and argued that they had not violated it. Having presented the case that way, they cannot fault the district court for adopting their own framing.

In any event, the relevant law was clearly established well before the events here. This Court has held that prison medical personnel's disregard of repeated requests for treatment of a painful broken bone stated an Eighth Amendment claim. *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999). It has also denied qualified immunity where a prison nurse disregarded a known serious medical need. *Easter v. Powell*, 467 F.3d 459 (5th Cir. 2006); *see also Sims v. Griffin*, 35 F.4th 945 (5th Cir. 2022) (reaffirming that *Easter* clearly establishes the unlawfulness of knowingly ignoring a prisoner's serious medical needs). These precedents gave Defendants fair warning that deliberately obstructing medical evaluation for a suspected fracture, or knowingly ignoring repeated complaints of pain and a need for follow-up care in a

prisoner's only remaining eye, violated the Eighth Amendment. Defendants' contrary arguments depend on factual inferences this Court cannot draw in their favor at this stage.

This Court should therefore dismiss the appeal insofar as it challenges the genuineness of the factual disputes identified by the district court and affirm the denial of qualified immunity to the extent it reaches the merits.

## ARGUMENT

### I. Defendants' First Two Arguments Challenge the Genuineness of the District Court's Factual Disputes and Are Therefore Outside this Court's Jurisdiction.

As explained in the Jurisdictional Statement, this Court may review whether the facts the district court deemed sufficiently supported would establish a constitutional violation and defeat qualified immunity. It may not, however, revisit whether the evidence genuinely supports those facts. *Kinney*, 367 F.3d at 347–48. Defendants acknowledge that distinction. Op. Br. 1. Yet their first two arguments principally seek to relitigate what the evidence establishes, rather than explain why the district court's version of events fails to amount to deliberate indifference.

*a) DuBose's elbow injury*

Recall the district court's analysis. DuBose fractured his elbow in February 2023. ROA.549. He "saw Nurse Greer, who told him that she had scheduled him to see a visiting doctor." *Id.* But these appointments were rescheduled twice. *Id.* On

March 7, he submitted a Health Care Request form saying that the head nurse had stopped him seeing the visiting doctor and asking for help. *Id.* On March 9, she told him that the visit had been "refused" by higher ups. *Id.* On March 20, 2023, he submitted another request. *Id.* In April, DuBose submitted a grievance saying that Nurse Norman had rescheduled his appointments twice and staff were ignoring his health care requests. *Id.*

Nurse Norman denied stopping DuBose from seeing the visiting doctor for his elbow. ROA.550. But the district court held that a reasonable jury could conclude to the contrary. *Id.* Nurse Greer told DuBose that he had been "refused" to see the visiting doctor, and a reasonable jury could conclude that her supervisor, Nurse Norman, had done the refusing. *Id.* The court therefore concluded that there was a genuine dispute of material fact on whether Norman's "refusing and ignoring DuBose's repeated requests to see a physician following his February 2023" elbow injury constituted deliberate indifference. *Id.*

Defendants' arguments in Section I of their brief are that DuBose first, failed to show that Nurse Norman was specifically aware of the seriousness of his elbow injury; and second, failed to show that Nurse Norman was responsible for the rescheduling of his eye surgery. DuBose's evidence, Defendants write, was "[]conclusory," "speculative," and did not satisfy "the summary judgment evidentiary standard." Op. Br. 18.

Both of these arguments are outside this Court's jurisdiction. First, whether a specific official had the requisite intent is a question of fact not subject to review on this interlocutory posture. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). In *Sims v. Griffin*, a district court denied summary judgment against a group of prison guards, holding that circumstantial evidence suggested that a factfinder should resolve whether they were subjectively aware of a detainee's need for medical care. 35 F.4th 945, 950 (5th Cir. 2022). Defendants argued that the district court "erred by finding fact disputes on a constitutional violation" because the record evidence did not establish that the defendants drew the subjective inference that the plaintiff required medical care. *Id.* This Court explained that it lacks jurisdiction to review these factual questions on interlocutory review. *Id. Sims* controls here: Whether Norman actually knew of DuBose's need for medical attention and personally obstructed his appointments are precisely the disputed factual questions the district court reserved for the jury. ROA.550.

In *Smith v. Brenoettsy*, the district court ruled denied summary judgment to the warden of Louisiana State Penitentiary. 158 F.3d 908, 912 (5th Cir. 1998). A prisoner wrote to him warning that he was under threat of attack; then he was stabbed. *Id.* The warden took an interlocutory appeal arguing, *inter alia*, that the

letter was not specific enough to put him on subjective notice that the prisoner was genuinely under threat. This Court explained that it lacked jurisdiction "to resolve the factual question of whether" the information genuinely put the warden on notice of a serious threat. *Id.*

Nurse Norman also goes beyond this Court's jurisdiction in arguing that she was not the one responsible for the constitutional violation, i.e. the "I didn't do it" defense. The Supreme Court unanimously rejected jurisdiction over the same defense that Norman raises here in *Johnson v. Jones*. 515 U.S. 304 (1995). The plaintiff in *Johnson* brought a § 1983 action against five police officers for excessive force. Three officers moved for summary judgment, asserting qualified immunity and arguing that "whatever evidence Jones might have about the other two officers, he could point to no evidence that these three had beaten him or had been present while others did so." *Id.* at 307. After the district court denied the officers' motion, they appealed, reiterating that "the record contained 'not a scintilla of evidence'" that they participated in the challenged conduct. *Id.* at 308. The Seventh Circuit rejected that argument, holding that it lacked jurisdiction over the officers' "contention that 'we didn't do it.'" *Id.* The Supreme Court unanimously affirmed. It held that the district court's determination that the record "raised a genuine issue of fact concerning [the officers'] involvement in the alleged beating" was "not appealable." *Id.* at 307, 313. Instead, the officers could appeal only "abstract issues

of law" relating to qualified immunity. *Id.* at 317; *see Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (*Johnson* held that a district court's determination that "the evidence could support a finding that particular conduct occurred" is "nonappealable"). *Johnson* forecloses Norman's "I didn't do it" argument.

To the extent Norman contends that she lacked access to DuBose's grievances or medical records, the argument likewise asks this Court to resolve a factual dispute. OCC's grievance procedure designated the medical director as the first-step respondent to medical grievances. ROA.548. DuBose also provided evidence connecting Norman to responses to his medical requests. ROA.547–48. The district court found that this evidence permitted an inference that Norman knew of DuBose's ongoing eye complaints and their serious implications. ROA.548. Whether that inference is ultimately persuasive is a question for the jury, not this Court on interlocutory appeal.

*b) DuBose's eye injury*

Defendants' arguments on DuBose's eye treatment track those of his elbow. The district court found "evidence that Norman knew of DuBose's ongoing eye complaints and their serious implications but did nothing." ROA.548. DuBose "made his concerns known to Defendants via repeated sick call requests and ARPs, one of which included a direct plea to Warden Campbell." ROA.547. The court concluded that there is "a genuine dispute of material fact as to whether Defendants

were deliberately indifferent to a substantial risk of serious harm by ignoring and refusing to credit DuBose's continued complaints of pain and discomfort in his lone, remaining eye." ROA.548. Although the after-visit summary from his February visit did not specifically list any upcoming appointments, the court was "not persuaded that Defendants may continue to rely on the document for over one year in the face of DuBose's repeated representations that his eye was bothering him and that he required eye surgery." ROA.544.

Defendants contest the district court's conclusion by arguing that "the district court relied upon immaterial" evidence in ruling for DuBose. Op. Br. 20. They also write that DuBose failed to show that Campbell "was aware of DuBose's alleged medical needs." Op. Br. 22. As explained above, these are exclusively arguments over which this Court lacks jurisdiction. The materiality of evidence is not before this Court. A review of the factual question over whether Campbell was aware of DuBose's medical needs is not before this Court.

Defendants' account also omits facts and inferences central to the district court's ruling. When DuBose was transferred prisons, he told staff upon arriving in Madison Parish Correctional Center that he had been scheduled for eye surgery at Ochsner LSU Health–Shreveport; they called, confirmed he had been scheduled for treatment, and sent him back to OCC the next day. ROA.546–47. The district court held that this "begs the question why Defendants were unwilling to do the same and

confirm that DuBose had further treatment scheduled." ROA.547. "Instead, they turned a deaf ear to his repeated entreaties and simply relied on his [after-visit summary]." *Id.* Mere weeks after his transfer to another facility, that facility took DuBose to LSU-Shreveport, which explained that the arms of the lens device were causing the pain and discomfort he had been experiencing. ROA.545–46. He underwent eye surgery shortly thereafter. ROA.546. As the district court explained, DuBose's new facility "credited his complaints of eye pain and his professed need for surgery and transported him to an ophthalmology appointment where it was confirmed that he needed surgery." ROA.546.

In this interlocutory posture, Defendants "must be prepared to concede the best view of the facts to the plaintiff." *Gonzales v. Dallas Cnty., Tex.*, 249 F.3d 406, 411 (5th Cir. 2001). Leaving out key facts the district court relied on is not such a concession.

## II. Defendants' Clearly Established Law Argument Does Not Warrant Reversal.

*a) Forfeiture*

Defendants argue that the district court erred by characterizing the relevant right at too high a level of generality. Op. Br. 24. They neglect to mention the reason why the district court did so—Defendants told them to do so. Defendants' motion for summary judgment, after a stock description of the defense of qualified immunity, contained two sentences of analysis: "Although Plaintiff has a clearly

established right under the United States Constitution to medical care, he has not established either Warden Paul Campbell or Nurse Donna Norman violated that right by exhibiting a wanton disregard of Plaintiff's obvious medical needs." ROA.292. "Considering neither Defendant violated Plaintiff's Constitutionally protected rights, qualified immunity is appropriate here." *Id.* Defendants therefore both a) defined the right at a broad level of generality ("medical care"); and b) conceded that DuBose had the clearly established right in question. The district court naturally concluded that "Defendants conceded that DuBose had a clearly established right to medical care." ROA.551.

Defendants did not attempt to undo their concession until they objected to the Report and Recommendation that had adopted their own framing. ROA.567. This Court has held that "issues raised for the first time in objections to the report of a magistrate judge are not properly before the district judge." *Finley v. Johnson*, 243 F.3d 215, 219 n.2 (5th Cir. 2001); *see also Cupit v. Whitley*, 28 F.3d 532, 535 n.5 (5th Cir. 1994) (citing the First Circuit for its holding that "a party has a duty to put its best foot forward before the Magistrate Judge—i.e., to spell out its arguments squarely and distinctly—and, accordingly, that a party's entitlement to de novo review before the district court upon filing objections to the Report and Recommendation of the Magistrate Judge does not entitle it to raise issues at that stage that were not adequately presented to the Magistrate Judge") (cleaned up).

Defendants made no attempt to explain or justify their forfeiture before the district court or this Court. They have therefore forfeited their argument contesting the level of generality of the "clearly established" right.

*b) Jurisdiction*

Even at step two of qualified immunity, this Court has jurisdiction only over the purely legal issue of whether the facts as the district court took them add up to a clearly established constitutional violation. Defendants' description of the step-two inquiry does not stay within its jurisdictional bounds in several important respects.

First, Defendants again refuse to credit the district court's version of the facts. They argued that they acted reasonably when they sincerely "believe[d that] no surgical intervention was necessary" for his eye. Op. Br. 26. As described above, however, the district court held that a reasonable jury could believe that Defendants *did* know that DuBose needed treatment for his eye and refused to provide it. ROA.547–48. Defendants' step-two argument is therefore reliant on the version of the facts that the district court did not share and that this Court lacks jurisdiction to reconsider.

Second, Defendants attempt to introduce credibility evidence that they never even mentioned in their summary judgment motion, nor to their objections to the Report and Recommendation. They argue to this Court that DuBose was willing to use his lack of medical care as "leverage to get moved to a different dorm," which

they argue demonstrates that DuBose was not "trustworthy." Op. Br. 27. Defendants cannot, however, ask this Court to either resolve credibility determinations against DuBose on summary judgment nor to reverse the district court's determination that questions of credibility remain open as fact questions. ROA.548. Just as importantly, Defendants are not challenging pure legal determinations when they ask this Court to reverse the district court based on record evidence that it never presented to the court as part of their qualified immunity defense.

*c) Even if this Court were to analyze the step-two qualified immunity question on de novo review, this Court should still affirm.*

Defendants had one legal question to present to this Court: did Defendants' actions, as understood by the district court, violate clearly established law? At no point in their opening brief have they done so. This Court need say nothing more in resolving this appeal. If, however, this Court looks beyond Defendants' omission to analyze the legal question that Defendants could have but did not bring, it should still affirm.

*Elbow injury*

The district court found evidence that DuBose fractured his elbow in February 2023 and repeatedly sought an examination by a physician. ROA.549. Although Nurse Greer initially scheduled him to see a visiting physician, the appointments were rescheduled, and Greer later told DuBose that he had been refused an appointment. ROA.549–50. The court found sufficient evidence for a jury to infer

that Nurse Norman herself had prevented DuBose from seeing the physician despite his repeated requests for care. ROA.550. DuBose consequently went more than a year without a physician examining his injured elbow. By the time he was examined, the fracture had healed out of alignment, and a physician advised that corrective surgery would require rebreaking the bone and inserting a plate. ROA.550.

This Court has held that a refusal to properly treat a broken bone states a claim under the Eighth Amendment against multiple medical personnel, including a scheduling nurse who refused to let the plaintiff see a doctor. *Harris v. Hegmann*, 198 F.3d 153, 159–60 (5th Cir. 1999). That, along with this Court's many other Eighth Amendment precedents, are sufficient to overcome the defense of qualified immunity on summary judgment. In *Easter v. Powell*, this Court evaluated a qualified immunity defense to an Eighth Amendment medical care claim. 467 F.3d 459, 465 (5th Cir. 2006). This Court held that the defendants who "offered no treatment options to a patient with a history of" health problems who was experiencing "severe pains" were not entitled to qualified immunity. *Id.* at 465; *see also Sims v. Griffin*, 35 F.4th 945, 951 (5th Cir. 2022) (endorsing and using *Easter*'s level of generality); *Eugene v. Deville*, 791 F. App'x 484, 485 (5th Cir. 2020) (explaining that a 10-month delay of treatment for dental injuries states a claim under the Eighth Amendment for the pain suffered during that time). The general principles articulated in previous cases were sufficient—a plaintiff does not need to go disease-

by-disease in defendants being on notice that they cannot deny prisoners treatment for serious health needs. Defendants argue that the district court erred in articulating a broad level-of-generality for the relevant right but fail to actually analyze the level-of-generality that this Court uses to see if the record here is sufficient. It is.

*Eye injury*

Did a prison's medical director and its warden have fair warning that they could not ignore, for more than a year, repeated written complaints of a prisoner with one remaining eye? Yes. DuBose reported that the lens in that eye was detached and floating, that he was in pain, and that he needed specialist care. They never examined him, referred him, or tried to verify what he told them. ROA.544–48. By February 2023, this Court had answered that question several times. A prison official violates the Eighth Amendment when she "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)); *see Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (explaining that "intentionally denying or delaying access to medical care" violates Eighth Amendment). In *Easter*, a nurse who knew of a prisoner's documented condition "turned a deaf ear to his request for medical treatment," and the Court held that the violation was clearly established. 467 F.3d at 464–65. It rejected the

argument that a case specific to the setting was required, because that "reads the right too narrowly." *Id.* at 465 n.30 (quoting *Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003)). In *Harris v. Hegmann*, a doctor and two nurses "ignored [the prisoner's] urgent and repeated requests for immediate medical treatment" and his "complaints of excruciating pain," and the Court held that he stated a claim against each of them. 198 F.3d 153, 159–60 (5th Cir. 1999). And in *Sims v. Griffin*, decided nine months before DuBose's February 2023 appointment, this Court held that *Easter* clearly established the rule for officials who "did nothing" in the face of a prisoner's repeated pleas. Whether they "refused [his] requests, or merely disregarded them, makes no difference." 35 F.4th 945, 951–52 (5th Cir. 2022). Nor must the neglect leave a permanent injury: pain suffered during a delay caused by deliberate indifference is itself substantial harm. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422–23 (5th Cir. 2017).

The record here fits those cases closely. In August 2023, DuBose wrote that his lens was "still . . . floating unattached," that he was in pain, and that he needed surgery. No one responded. ROA.544. In November 2023, he wrote to the Warden by name: "[y]ou are contributing to [the] loss of my only eye." The response told him he had no follow-up scheduled until 2024 and to submit another sick call. ROA.545. He was never taken to an ophthalmologist for the rest of his time at the facility. ROA.546. The district court found evidence that Norman "knew of

DuBose's ongoing eye complaints and their serious implications but did nothing," and that Defendants "turned a deaf ear to his repeated entreaties." ROA.547–48. Here we have *Easter*'s "deaf ear," *Harris*'s ignored "repeated requests," and *Sims*'s officials who "did nothing." Defendants' only answer is that they relied on a visit summary that did not mention surgery. But that goes to whether they knew of the risk, which the district court found genuinely disputed and which this Court cannot revisit on this appeal.

## CONCLUSION

This Court should either dismiss this appeal for lack of jurisdiction or affirm the ruling of the district court.

Date: October 19, 2026

/s/ Samuel Weiss
Samuel Weiss
Rights Behind Bars
1800 M Street NW, Front 1 #33821
Washington, DC 20033

Attorney for Plaintiff-Appellee Walter Allen DuBose

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: October 19, 2026

/s/ Samuel Weiss
Samuel Weiss
Rights Behind Bars
1800 M Street NW, Front 1 #33821
Washington, DC 20033

Attorney for Plaintiff-Appellee Walter Allen DuBose

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,605 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word with a Times New Roman 14-point font.

Date: October 14, 2026

/s/ Samuel Weiss
Samuel Weiss
Rights Behind Bars
1800 M Street NW, Front 1 #33821
Washington, DC 20033

Attorney for Plaintiff-Appellee Walter Allen DuBose