NO. 26-30199

# In the United States Court of Appeals for the Fifth Circuit

WALTER ALLEN DUBOSE,
*Plaintiff – Appellee*

V.

PAUL CAMPBELL; WARDEN; DONNA NORMAN, NURSE,
*Defendants – Appellants*

---

On Appeal from the United States District Court for the
Western District of Louisiana
3:24-cv-00120

---

REPLY BRIEF OF DEFENDANTS-APPELLANTS,
PAUL CAMPBELL AND DONNA NORMAN

---

Respectfully Submitted by:

*/s/ Jason P. Wixom*
**Jason P. Wixom (LSBN 32273)**
**RODRIGUE & ARCURI, LLP**
1615 Poydras St., Ste. 1250
New Orleans, LA 70112
Phone: (504)592-4600
Fax: (504)592-4641
Email: jason@rodriguearcuri.com
***Counsel for Defendants-Appellants Warden Paul Campbell and Nurse Donna Norman***

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

SUMMARY OF THE ARGUMENT ........ 1

ARGUMENT ........ 3

I. THIS COURT HAS JURISDICTION BECAUSE APPELLANTS ACCEPT THE DISTRICT COURT'S VERSION OF THE FACTS AND CHALLENGE ONLY THEIR LEGAL SUFFICIENCY ........ 3

A. *Johnson v. Jones* does not shield the district court's legal conclusions from review ........ 3

B. Accepting the district court's facts, Norman's handling of DuBose's February 2023 elbow complaint does not amount to deliberate indifference ........ 5

C. Accepting the district court's facts, Warden Campbell had no personal involvement in DuBose's eye care ........ 8

D. Accepting the district court's facts, neither Appellant was deliberately indifferent to DuBose's eye condition ........ 11

II. APPELLANTS DID NOT FORFEIT THE CLEARLY-ESTABLISHED-LAW INQUIRY ........ 14

III. NO CLEARLY ESTABLISHED LAW PLACED THE UNLAWFULNESS OF APPELLANTS' CONDUCT BEYOND DEBATE ........ 18

A. The district court's second-prong analysis rested on unpublished decisions and a right defined at the highest level of generality ........ 19

B. DuBose's authorities do not "squarely govern" the facts the district court found ........ 20

C. Properly framed, the questions presented have no clearly established answer ........ 21

CONCLUSION ........ 23

CERTIFICATE OF SERVICE ........ 25

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ........ 26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) .......... 18

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .......... 7, 10

*Banuelos v. McFarland*, 41 F.3d 232 (5th Cir. 1995) .......... 12

*Behrens v. Pelletier*, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 733 (1996) .......... 1, 4

*Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam) .......... 16, 23

*Brumfield v. Hollins*, 551 F.3d 322 (5th Cir. 2008) .......... 15

*City of Tahlequah v. Bond*, 595 U.S. 9, 142 S.Ct. 9, 211 L.Ed.2d 170 (2021) (per curiam) .......... 18

*Cope v. Cogdill*, 3 F.4th 198 (5th Cir. 2021) .......... 15, 23

*Cousin v. Small*, 325 F.3d 627 (5th Cir. 2003) .......... 15

*Cupit v. Whitley*, 28 F.3d 532 (5th Cir. 1994) .......... 17

*Delaughter v. Woodall*, 909 F.3d 130 (5th Cir. 2018) .......... 19

*Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752 (5th Cir. 2001) .......... 8, 13

*Easter v. Powell*, 467 F.3d 459 (5th Cir. 2006) .......... 2, 20, 21

*Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) .......... 8, 15

*Eugene v. Deville*, 791 F. App'x 484 (5th Cir. 2020) .......... 21

*Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) .......... 6, 7, 12, 13

*Finley v. Johnson*, 243 F.3d 215 (5th Cir. 2001) .......... 17

*Gobert v. Caldwell*, 463 F.3d 339 (5th Cir. 2006) .......... 8, 13, 14

*Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999) .......... 2, 20

*Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) .......... 3, 4, 5

*Joseph on behalf of the Estate of Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020) .......... 2

*Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004) .......... 4

*Marks v. Hudson*, 933 F.3d 481 (5th Cir. 2019) .......... 19

*Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011) (en banc) .......... 15

*Mullenix v. Luna*, 577 U.S. 7, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) .......... 18

*Pena v. Starr County, Texas*, 191 F.4th 239 (5th Cir. 2026) .......... 21

*Rogers v. Jarrett*, 63 F.4th 971 (5th Cir. 2023) .......... 16

*Sims v. Griffin*, 35 F.4th 945 (5th Cir. 2022) .......... 2, 4, 20, 21

*Smith v. Brenoettsy*, 158 F.3d 908 (5th Cir. 1998) .......... 11

*Thompson v. Steele*, 709 F.2d 381 (5th Cir. 1983) .......... 7

*Thompson v. Upshur Cnty.*, 245 F.3d 447 (5th Cir. 2001) .......... 6, 16

*Vasquez v. Dretke*, 226 F. App'x 338 (5th Cir. 2007) .......... 10

*White v. Pauly*, 580 U.S. 73, 137 S.Ct. 548, 196 L.Ed.2d 463 (2017) (per curiam) .......... 18

*Zorn v. Linton*, 607 U.S. 568, 146 S.Ct. 926, 224 L.Ed.2d 400 (2026) .......... 21

**Constitutional Provisions**

U.S. Const. amend. VIII .................................................................. 22, 23

**Statutes**

42 U.S.C. § 1983 ......................................................................... 7

**Rules**

Fed. R. Civ. P. 12 ......................................................................... 1

## SUMMARY OF THE ARGUMENT

DuBose's answering brief correctly identifies the limits of this interlocutory appeal but incorrectly treats those limits as eliminating review of the legal questions that have been presented. Campbell and Norman do not ask this Court to decide whose testimony is credible, whether Norman actually prevented a physician visit, or whether Campbell actually learned of DuBose's complaints. For this appeal, they accept the facts and plaintiff-favorable inferences underlying the district court's ruling, in much the same way as they would in preparing a Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). Their argument is that those facts, taken as true, do not add up to deliberate indifference by either Appellant, and they do not describe conduct that any controlling precedent had clearly placed beyond constitutional debate. The questions which are to be addressed are questions of law, and they are squarely within this Court's interlocutory jurisdiction. *Behrens v. Pelletier*, 516 U.S. 299, 312-13, 116 S.Ct. 834, 133 L.Ed.2d 733 (1996).

DuBose's remaining arguments fare no better. Appellants did not "forfeit" the clearly-established-law inquiry. They invoked qualified immunity, which placed the burden on DuBose to identify clearly

established law identifying a source for DuBose's argument that Appellants each *individually* violated his constitutional rights. DuBose never did and it was not Appellants' obligation to do so for him. *See Joseph on behalf of the Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020). His deficiency remains on appeal. The cases DuBose now offers—*Sims v. Griffin,* 35 F.4th 945 (5th Cir. 2022), a case in which a dying overdose patient's jailers watched him vomit and cry out for hours, *Easter v. Powell,* 467 F.3d 459 (5th Cir. 2006), in which an inmate with cardiac history was refused medication, and *Harris v. Hegmann,* 198 F.3d 153 (5th Cir. 1999), a case in which an inmate had an almost immediate adverse reaction to a surgery performed just minutes prior—do not "squarely govern" a nurse and a warden who relied on a treating ophthalmologist's documented findings, or a supervising nurse's handling of a visiting-physician appointment for an inmate already under nursing evaluation.

The answering brief also overreads the summary-judgment memorandum's acknowledgment of an established constitutional right to medical care. That statement did not expressly concede that every alleged omission violated a sufficiently particularized, clearly established

right. Nevertheless, DuBose's preservation objection warrants a direct answer. The defense was raised below and the magistrate judge ruled on both prongs without identifying jurisprudence applicable to the specific facts of this case. ROA.292, 551–52, 567. For these reasons, and the reasons identified in Appellants' original brief, the district court's denial of qualified immunity should be reversed.

## ARGUMENT

### I. THIS COURT HAS JURISDICTION BECAUSE APPELLANTS ACCEPT THE DISTRICT COURT'S VERSION OF THE FACTS AND CHALLENGE ONLY THEIR LEGAL SUFFICIENCY.

#### A. *Johnson v. Jones* does not shield the district court's legal conclusions from review.

DuBose is correct that this Court may not decide whether the summary-judgment record supports the facts the district court found. *Johnson v. Jones*, 515 U.S. 304, 313, 319–20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). But *Johnson* does not make a denial of qualified immunity unreviewable whenever the district court uses the phrase "genuine dispute of material fact." The Supreme Court made that clear one year later. *Johnson* "permits [a defendant] to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for

purposes of summary judgment met the *Harlow* standard of 'objective legal reasonableness.'" *Behrens*, 516 U.S. at 313. This Court, sitting en banc, has said the same. This Court has jurisdiction to decide "whether the defendants are entitled to qualified immunity on the facts that the district court found sufficiently supported in the summary judgment record." *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004). And when, as here, the district court does not spell out every fact it assumed, this Court reviews the record "to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Id.* at 348 (quoting *Johnson*, 515 U.S. at 319). DuBose's own lead authority confirms the point. In *Sims v. Griffin*, this Court declined to review the genuineness of the fact disputes but proceeded to decide whether those disputes were *material* and whether the law was clearly established. 35 F.4th 945, 950 (5th Cir. 2022).

That is the only question Appellants ask this Court to answer. Their opening brief expressly disclaimed any challenge to the genuineness of the facts the district court relied upon and framed each issue as whether DuBose's version of events, "[a]ssuming [his] allegations are true," suffices to defeat qualified immunity. Op. Br. 2, 18 & n.1. That some of

Appellants' sentences characterized DuBose's evidence as thin does not convert a materiality appeal into a sufficiency appeal. Appellants noted their disagreement with the district court's inferences only to make clear that they are accepting those inferences *arguendo*, not conceding them for all purposes. The Court can, and should, decide this appeal on the facts exactly as the district court described them.

### B. Accepting the district court's facts, Norman's handling of DuBose's February 2023 elbow complaint does not amount to deliberate indifference.

DuBose characterizes Norman's argument as an "I didn't do it" defense barred by *Johnson*. Appellee Br. 14–15. But Appellants do not ask the Court to revisit the district court's inference that Norman, as Nurse Greer's superior, was the person who "refused" DuBose's visit with the visiting physician. ROA.550. For purposes of this appeal, Appellants accept that inference. The question is whether that fact, in addition to the others the district court identified, establishes that Norman was deliberately indifferent as a matter of law. It does not.

Deliberate indifference requires more than a delayed appointment. DuBose must show that Norman "was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,"

that she "actually drew that inference," and that she then disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); ROA.537. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [the Supreme Court's] cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. And "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001).

Here is what the district court actually found. DuBose believed—"surmised," in his words—that his elbow was fractured after a fight on February 25, 2023. ROA.134, ROA.549. He was evaluated by Nurse Greer on March 1, 2023, who scheduled him to see a visiting physician. ROA.134, ROA.549. That appointment was rescheduled twice. ROA.134, ROA.549. On March 9, Nurse Greer told him he "had been refused for seeing visiting doctor." ROA.134, ROA.549. DuBose submitted health-care requests on March 7 and March 20, and an April 18 grievance that Captain Jerkins—not Norman—rejected. ROA.409, ROA.549. By late April, his requests "tapered off," and the district court surmised that any

swelling subsided. ROA.550. From these facts, the district court inferred that Norman was "the most likely suspect" in the refusal. ROA.550.

What the district court did *not* find—and what nothing in its analysis suggests it assumed—is that Norman ever examined DuBose, read his health-care requests, or otherwise knew facts indicating that DuBose had sustained a fracture rather than a painful soft-tissue injury already under nursing evaluation, much less that she actually drew the inference that he faced a substantial risk of serious harm. The district court's "most likely suspect" reasoning identifies *who* made a scheduling decision. It says nothing about *what that person knew* when making it. A determination of who rescheduled an appointment is not a finding of subjective awareness of a substantial risk, and treating it as one collapses *Farmer*'s subjective standard into a respondeat superior rule that § 1983 forbids. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (personal involvement is "an essential element" of a § 1983 claim).

Even assuming Norman knew that DuBose was asking to see the visiting physician for elbow pain and swelling, the decision to defer a non-emergency physician visit for an inmate who had already been evaluated

by a nurse is a judgment about the timing and level of care—"a classic example of a matter for medical judgment." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). At most, it was a mistaken judgment that, in hindsight, delayed diagnosis of a fracture. That is the stuff of negligence, not the "extremely high" standard of deliberate indifference. *Id.*; *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Finally, DuBose's brief embellishes the record. He asserts that Nurse Greer told him the visit had been "refused" "by higher ups." Appellee Br. 12. The district court found no such statement, and the phrase appears nowhere in its findings. ROA.549–50. The district court found only that Greer told DuBose he "had been refused for seeing visiting doctor." ROA.549. DuBose cannot expand the facts the district court assumed while simultaneously insisting that this Court is bound by them.

### C. Accepting the district court's facts, Warden Campbell had no personal involvement in DuBose's eye care.

DuBose's defense of the ruling against Warden Campbell consists entirely of the assertion that whether Campbell was "aware of DuBose's

medical needs" is a fact question beyond this Court's reach. Appellee Br. 16. But Appellants do not dispute any fact the district court found about Campbell. The district court identified three: (1) DuBose's November 5, 2023, grievance was addressed to "Warden Campbell" by name; (2) DuBose stated that he sent notes and grievances to the Warden's office "never to be seen again"; and (3) DuBose declared that Campbell, as warden, "has access" to inmate grievances and medical records. ROA.542–43, 545, 547–48. Appellants accept all three. The legal question is whether those facts show that Campbell—a non-medical official who "do[es] not provide medical care to inmates," ROA.540—personally knew of and disregarded a substantial risk to DuBose's health. They do not.

*First*, the November 5, 2023, grievance that the district court described as a "direct plea to Warden Campbell" was not answered by Campbell. It was routed to medical staff and answered by Nurse Wilson, who told DuBose that he had been seen at Ochsner on February 7, 2023, that he had no follow-up appointments "until 2024," and that if he had "any other medical complaints," he should "fill out a sick call to be seen & treated." ROA.545. The district court did not find that Campbell read the grievance, and nothing about the way it was processed suggests he

did. Merely addressing a grievance to an official is not a sufficient basis for surmising that the official received it.

*Second*, an official's "access" to an inmate's file is not knowledge of its contents. If it were, every warden would be charged with constructive knowledge of every sick-call request in every inmate's file—precisely the vicarious liability *Iqbal* forbids. 556 U.S. at 676–77.

*Third*, even if the Court assumes that Campbell read every note and grievance DuBose sent, the result is the same. A non-medical prison administrator who knows that an inmate has been sent to and examined by an outside specialist, and whose medical staff have responded to the inmate's complaints, is entitled to rely on the judgment of those medical professionals. *See Vasquez v. Dretke*, 226 F.App'x 338, 340 (5th Cir. 2007) (holding warden and director of clinical services "were not deliberately indifferent" where they merely "deferred to the judgment of medical professionals"). Campbell, an administrator with no medical training, had no basis to second-guess the ophthalmologist's documented findings or his own medical staff's response to DuBose's grievance. DuBose identifies no decision of this Court holding that a warden in those circumstances acts with deliberate indifference.

*Smith v. Brenoettsy*, 158 F.3d 908 (5th Cir. 1998), on which DuBose relies, does not suggest otherwise. There, the question the warden raised was whether the content of a letter he **received**—which is a differentiating fact from this case's set of facts—was specific enough to alert him to the risk, which was viewed as a question that turned on how a jury would read the letter. *Id.* at 912. Here, by contrast, the question is whether the facts the district court identified establish Campbell's personal knowledge at all. That is a question of materiality, and the answer is no.

**D. Accepting the district court's facts, neither Appellant was deliberately indifferent to DuBose's eye condition.**

DuBose faults Appellants for "omit[ting]" the facts concerning his one-day transfer to Madison Parish Correctional Center. Appellee Br. 16–17. Appellants accept those facts. But they underscore, rather than undermine, the legal deficiency in DuBose's claim.

The most important fact about DuBose's eye claim is one the district court found in Appellants' favor and that DuBose's brief largely ignores; namely, the district court *credited* the After Visit Summary from DuBose's February 7, 2023, ophthalmology appointment as accurate. ROA.544 ("[F]or the purpose of this motion, the Court will credit the AVS,

as produced by Defendants."). That document, which was generated by the treating specialist who had just examined DuBose's eye, recorded that DuBose was in no pain, that there were no recent changes in his condition, that no orders were placed, that no medications were prescribed, and that he had "no upcoming appointments scheduled." ROA.527; ROA.539; ROA.544. In other words, on the facts as the district court found them, the treating ophthalmologist did not recommend surgery, did not schedule a follow-up, and did not order any treatment.

The district court nonetheless denied qualified immunity because Appellants did not do what officials at Madison Parish allegedly did—independently "confirm" whether DuBose had further treatment scheduled—and instead "relied on his AVS." ROA.547. The court's own phrasing reveals a legal error. Faulting an official for failing to investigate further, or for relying on a specialist's written findings rather than an inmate's contrary lay account, describes at most a failure to perceive a risk that the official arguably "should have perceived." *Farmer*, 511 U.S. at 838. It is not deliberate indifference. *Id.* Medical records documenting examinations and diagnoses may rebut an inmate's allegations of deliberate indifference, *Banuelos v. McFarland*, 41 F.3d

232, 235 (5th Cir. 1995), and the decision whether to provide additional treatment beyond what a physician ordered "is a classic example of a matter for medical judgment," *Domino*, 239 F.3d at 756. Deliberate indifference, moreover, "exists wholly independent of an optimal standard of care." *Gobert*, 463 F.3d at 349.

Nor does DuBose's subsequent course of treatment change the analysis. That a different facility, more than a year later and after DuBose had been transferred, took him to an ophthalmologist who ultimately recommended surgery says nothing about what Appellants subjectively knew in 2023 and early 2024. Deliberate indifference is measured by what the official actually knew at the time, not by what later providers discovered. *Farmer*, 511 U.S. at 837–38. And the district court itself acknowledged that the timing of the later appointment "could be explained away by the fact that DuBose was due for another eye checkup." ROA.546.

Finally, the district court's own recitation of the record refutes the notion that Appellants "did nothing." ROA.548. DuBose's November 2023 grievance about his eye was accepted and answered by medical staff, who explained his status and directed him to submit a sick-call request so that

he could be "seen & treated." ROA.545. Responding to an inmate's complaint by explaining the treating specialist's findings and directing him to the sick-call process is the antithesis of "refus[ing] to treat him" or "ignor[ing] his complaints." *Gobert*, 463 F.3d at 346. DuBose was subsequently seen by an ophthalmologist who indicated no further medical intervention was necessary and that no future appointments had been scheduled. There simply cannot be a finding of deliberate indifference in relying on that ophthalmologist's representations based on this Court's prior holdings.

## II. APPELLANTS DID NOT FORFEIT THE CLEARLY-ESTABLISHED-LAW INQUIRY.

DuBose's lead response to Appellants' second-prong argument is that Appellants forfeited it by acknowledging, in their summary-judgment memorandum, that DuBose had "a clearly established right under the United States Constitution to medical care." Appellee Br. 17–19 (quoting ROA.329).[1] That argument borders on the absurd and fails for four independent reasons.

[1]DuBose cites this passage as "ROA.292." Appellee Br. 18. The cited language appears at ROA.329; "292" is the district court's PageID number.

*First*, the burden on the second prong was never Appellants'. Once a defendant invokes qualified immunity, "the burden shifts to the plaintiff to rebut it." *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003); *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Appellants invoked the defense in their motion, ROA.328–29, and re-urged it in their reply, ROA.450. It was DuBose's burden to "identify a case," or a body of controlling authority, placing the unconstitutionality of Appellants' particular conduct "beyond debate." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc); *Cope v. Cogdill*, 3 F.4th 198, 205 (5th Cir. 2021). DuBose never did. And the cases on which the district court relied did not establish that Appellants' alleged actions under the facts of this case violated clearly established law. ROA.551–52 & n.10. Regardless, a defendant cannot "forfeit" an argument that the plaintiff bore the burden to overcome.

*Second*, Appellants' statement was not a concession that their particular conduct violated clearly established law. It was an accurate recitation of the abstract right that every prisoner enjoys under *Estelle*—exactly the kind of "broad general proposition" that the Supreme Court and this Court have repeatedly held does *not* answer the second-prong

inquiry. *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam); *Rogers v. Jarrett*, 63 F.4th 971, 977 (5th Cir. 2023). In the same paragraph, Appellants invoked the governing standard: that an official's conduct is objectively reasonable "unless all reasonable officers in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution." ROA.329 (quoting *Thompson*, 245 F.3d at 457). Acknowledging that prisoners have a right to medical care in general, while insisting that Appellants' specific conduct did not violate it, is not a concession that the unlawfulness of Appellants' specific conduct was clearly established.

*Third*, the issue was both pressed and passed upon below. The magistrate judge did not merely accept Appellants' supposed concession. She independently analyzed the second prong and concluded, citing a string of cases, that "by 2023, it was clearly established that a delay in medical care constitutes a violation of a clearly established constitutional right." ROA.551–52 & n.10. Appellants then objected on exactly that ground, arguing that "[n]either Plaintiff nor the Magistrate Judge identified law" establishing the unlawfulness of Appellants' particular

conduct. ROA.567. And the district judge expressly "considered" Appellants' "written objections" on "de novo review of the record" before adopting the recommendation. ROA.572. An argument that was raised, addressed by the magistrate judge, objected to, and considered by the district judge has not been forfeited.

*Fourth*, DuBose's authorities are inapposite. *Finley v. Johnson*, 243 F.3d 215, 219 n.2 (5th Cir. 2001), and *Cupit v. Whitley*, 28 F.3d 532, 535 n.5 (5th Cir. 1994), concern *issues* raised for the first time in objections to a report and recommendation. Qualified immunity was not a new issue but, instead, was the central issue in Appellants' motion and the magistrate judge's report.

DuBose also objects that Appellants' opening brief cited his February 2024 handwritten note to Norman, ROA.122, which he characterizes as "credibility evidence." Appellee Br. 19–20. Appellants do not ask this Court to resolve any credibility question against DuBose. The note was filed in the district court as an exhibit to Appellants' opposition to DuBose's motion for preliminary injunction, ROA.122–23, and it is part of the record on appeal. Appellants cited it only to illustrate the information potentially available to Norman when assessing

DuBose's complaints. The Court need not rely on it to reverse. The legal deficiencies described above are dispositive on the facts the district court found.

## III. NO CLEARLY ESTABLISHED LAW PLACED THE UNLAWFULNESS OF APPELLANTS' CONDUCT BEYOND DEBATE.

DuBose argues, in the alternative, that the law was clearly established because "a plaintiff does not need to go disease-by-disease in defendants being on notice that they cannot deny prisoners treatment for serious health needs." Appellee Br. 21–22. That is the very level of generality the Supreme Court has "repeatedly told courts . . . not to" use. *City of Tahlequah v. Bond*, 595 U.S. 9, 12, 142 S.Ct. 9, 211 L.Ed.2d 170 (2021) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). "[T]he clearly established law must be particularized to the facts of the case," *White v. Pauly*, 580 U.S. 73, 79, 137 S.Ct. 548, 196 L.Ed.2d 463 (2017) (per curiam), and "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established," *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotation marks omitted) (emphasis in

original). This Court applies that requirement in the medical-care context like any other.

### A. The district court's second-prong analysis rested on unpublished decisions and a right defined at the highest level of generality.

The district court framed the right as follows: "by 2023, it was clearly established that a delay in medical care constitutes a violation of a clearly established constitutional right." ROA.551. But that formulation is not a description of particular conduct at all. Application of it would serve to deny qualified immunity in every delay-of-care case regardless of what the defendant knew or did. Moreover, most of the decisions the district court cited—*Fuller*, *Vineyard*, *Miles*, *Eugene*, and *Smith v. Linthicum*—are unpublished. ROA.551–52 n.10. Unpublished decisions of this Court cannot clearly establish the law for qualified-immunity purposes. *Marks v. Hudson*, 933 F.3d 481, 486 (5th Cir. 2019).

The published authorities the district court cited are distinguishable on the very fact that matters most here. In *Delaughter v. Woodall*, 909 F.3d 130 (5th Cir. 2018), the plaintiff's physicians had *recommended surgery*, and the dispute concerned the failure to provide treatment that medical professionals had ordered. *Id.* at 135. So too in

the unpublished *Fuller*, where officials allegedly delayed surgery "despite a doctor's recommendation." ROA.551 n.10. Here, the district court credited the treating ophthalmologist's records, which recommended no surgery, ordered no treatment, and scheduled no follow-up. ROA.544. A case holding that officials may not disregard a physician's surgical recommendation says nothing about officials who *followed* the treating physician's documented findings.

### B. DuBose's authorities do not "squarely govern" the facts the district court found.

DuBose relies principally on *Easter v. Powell*, *Sims v. Griffin*, and *Harris v. Hegmann*. None comes close to supporting the proposition they supposedly create.

In *Easter v. Powell*, 467 F.3d 459 (5th Cir. 2006), a nurse, confronted face-to-face by an inmate with a known cardiac history, who was experiencing severe chest pain and had no access to his prescribed heart medication, sent him back to his cell without offering any treatment. *Id.* at 463–65. In *Sims*, jailers watched a visibly intoxicated detainee, whom they had reason to believe had ingested drugs, vomit black liquid repeatedly and cry out in pain dozens of times over a period of hours before he died and the officers, in this Court's words, "had a

front-row seat to [his] agonizing demise but did nothing to stop it." 35 F.4th at 952. Both cases involved officials who personally witnessed an acute, obviously life-threatening medical emergency and refused all care. Neither involved an official who relied on a specialist's documented findings, or a supervising nurse's handling of the scheduling of a physician visit for an inmate already evaluated by nursing staff.

DuBose's remaining authorities are similarly unhelpful. *Eugene v. Deville*, 791 F. App'x 484 (5th Cir. 2020), is unpublished, cannot clearly establish the law and, moreover, pertains to an inmate's alleged need for dentures. And DuBose's reliance on footnote 30 of *Easter*, which rejected the argument that a setting-specific case was required, Appellee Br. 22–23, cannot override the Supreme Court's repeated and more recent instructions that clearly established law must be defined with specificity. *See, e.g.*, *Zorn v. Linton*, 607 U.S. 568, 571-72, 146 S.Ct. 926, 224 L.Ed.2d 400 (2026); *Pena v. Starr County, Texas*, 191 F.4th 239, 248 (5th Cir. 2026).

### C. Properly framed, the questions presented have no clearly established answer.

If this Court is swayed that the evidence suggests personal involvement on the part of Appellants, defined at the appropriate level of

specificity and on the facts the district court assumed, the questions are these for the purpose of qualified immunity:

*As to the eye claim*: whether, in 2023 and early 2024, every reasonable nurse medical director and every reasonable non-medical warden would have known that the Eighth Amendment forbade them from relying on a treating ophthalmologist's contemporaneous written findings; those being no pain, no orders, no treatment, and no scheduled follow-up, rather than an inmate's contrary lay account that the specialist had verbally promised him surgery, where medical staff responded to the inmate's grievance by explaining his status and directing him to the sick-call process.

*As to the elbow claim*: whether, in March 2023, every reasonable supervising nurse would have known that the Eighth Amendment forbade her from deferring a visiting-physician appointment for an inmate who had already been evaluated by nursing staff for an elbow injury that had not been diagnosed as a fracture.

DuBose identifies no published decision of this Court or the Supreme Court answering either question in his favor, and Appellants are aware of none. "Unless existing precedent 'squarely governs' the

conduct at issue," the official is entitled to qualified immunity. *Cope*, 3 F.4th at 204 (quoting *Brosseau*, 543 U.S. at 201). DuBose's contention that Appellants' reliance on the After Visit Summary "goes to whether they knew of the risk," Appellee Br. 24, does not change that result. The second-prong inquiry asks whether the law clearly prohibited the conduct the district court assumed occurred. Even accepting that Appellants knew of DuBose's continuing complaints, no precedent clearly established that reliance on a treating specialist's documented findings in the face of those complaints violates the Eighth Amendment. Appellants are entitled to qualified immunity.

## CONCLUSION

The facts the district court found or assumed, accepted as true, do not establish that either Appellant was deliberately indifferent to DuBose's serious medical needs, and no clearly established law placed the unconstitutionality of their particular conduct beyond debate. Appellants respectfully request that this Court reverse the district court's denial of qualified immunity, render judgment that Warden Paul Campbell and Nurse Donna Norman are entitled to qualified immunity on DuBose's remaining claims, and dismiss those claims with prejudice.

Respectfully Submitted by:

*/s/ Jason P. Wixom*
**Jason P. Wixom (LSBN 32273)**
**RODRIGUE & ARCURI, LLP**
1615 Poydras St., Ste. 1250
New Orleans, LA 70112
Phone: (504)592-4600
Fax: (504)592-4641
Email: jason@rodriguearcuri.com
***Counsel for Defendants-Appellants Warden Paul Campbell and Nurse Donna Norman***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing pleading was this date electronically filed with the Clerk of Court using the Court's CM/ECF system. Notice of this filing will be sent to all parties and/or counsel of record, who are identified as follows, by operation of the Court's electronic filing system and/or by this date depositing same in the United States Mail, first class postage prepaid, and sent to their last known address:

1. Mr. Samuel Weiss, counsel for Plaintiff-Appellee, Walter DuBose, at sam@rightsbehindbars.org.

New Orleans, Louisiana, this 9th day of November, 2026.

*/s/ Jason P. Wixom*
JASON P. WIXOM (LSBN 32273)

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Pursuant to 5th Cir. R. 32.2 and 32.3, the undersigned certifies that this Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7).

1. EXCLUSIVE OF THE EXEMPTED PORTIONS IN 5th Cir. R. 32.2, THE BRIEF CONTAINS:

   A. 4,537 Words; OR

   B. N/A Lines of text in monospaced typeface.

2. THE BRIEF HAS BEEN PREPARED:

   A. in proportionally spaced typeface using: Software Name and Version: Microsoft Word for Office 365 in Century Schoolbook, 14 point font.

   B. in monospaced (nonproportionally spaced) typeface using: N/A

   Typeface name and number of characters per inch: N/A

3. THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN Fed. R. App. P. 32(a)(7), MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

New Orleans, Louisiana, this 9th day of November, 2026.

*/s/Jason P. Wixom*
JASON P. WIXOM (LSBN 32273)